This Court granted certiorari to review several issues which have heretofore been unaddressed by an appellate court.
This case has a somewhat lengthy appellate history. The petitioner was convicted of first degree murder and sentenced to life imprisonment. He appealed to the Court of Criminal Appeals asserting six grounds for reversal. That Court, after treating some of the issues raised, reversed the judgment of conviction. In reversing the judgment of the circuit court on the accomplice/corroboration issue, the Court of Criminal Appeals noted that "[t]here are other claimed errors which entitle appellant (Yarber) to a reversal" but that Court declined the opportunity to address those errors, noting that they were unlikely to "reoccur in the event this case is tried again."
This Court, on certiorari, reversed the judgment of the Court of Criminal Appeals on the accomplice/corroboration issue and implicitly affirmed that Court's holding as to whether immunity from prosecution should have been granted to the petitioner. On remand, the Court of Criminal Appeals affirmed the conviction on the basis of this Court's opinion.
Ordinarily we would remand to the Court of Criminal Appeals to initially address the *Page 1233 
untreated issues, but since the case was inadvertently put on the argument docket and argued before this Court we will not further delay the matter.
The untreated issues on the original appeal have been preserved pursuant to Rule 39 (k), ARAP, and are properly presented. The issues are whether the trial court erred in:
 (1) allowing the prosecutor to comment on the petitioner's failure to testify;
 (2) allowing evidence concerning a projectile extracted from petitioner's apartment wall without the State first laying a proper predicate;
 (3) failing to find that the above projectile was "fruit of the poisonous tree"; and
 (4) instructing the jury with respect to their obligation to reconcile the testimony.
In his closing argument the District Attorney, Mr. Reynolds, made the following statements to which the petitioner objected:
 MR. REYNOLDS: Where was Bud Yarber? Where was Samuel Yarber? Was he somewhere else? Have you heard anything? He was with Danny Miles. Jim Birdieshaw put them together that afternoon, whatever time it was, you can draw on your recollection. What's the conversation? Going out drinking with Danny, going to Terry's. [Emphasis added.]
MR. ERBEN: We object.
THE COURT: Overruled.
MR. ERBEN: We except.
 (Mr. Reynolds continued with argument to the jury, during which the following occurred:)
 MR. REYNOLDS: Where did they tell you they went? They went to Terry's and then they went to Cabana and went back to the 2010 Lounge. Where is Bud Yarber?
Miles says he was with him. What corroboration —. [Emphasis added.]
MR. ERBEN: We object.
THE COURT: Overruled.
MR. ERBEN: We except.
 (Mr. Reynolds continued with argument to the jury, during which the following occurred:)
 MR. REYNOLDS: But where is Bud Yarber? Then Danny Mylar [Miles], who is charged and who will be tried for the offence, tells you that Bud Yarber . . [Emphasis added.]
MR. ERBEN: We object to that.
THE COURT: Overruled.
MR. ERBEN: We except.
 (Mr. Reynolds continued with argument to the jury, during which the following occurred:)
 MR. REYNOLDS: . . . and in this road and drive and back down into a road beside a creek and they are slaughtered. Danny Miles tells you Bud Yarber was there and did it. Where was Bud Yarber? [Emphasis added.]
MR. ERBEN: Objection.
THE COURT: Overruled.
MR. ERBEN: Except.
* * * * * *
 MR. REYNOLDS: Danny Miles was called by the State. You heard what we asked him before he testified. "You know you are charged, you know you are going to be tried," and did he go to the police on Monday? No. Danny Miles go Tuesday? No. Did he go Wednesday? No. He never went until they came to him. Where was Samuel Yarber? [Emphasis added.]
MR. ERBEN: I object.
THE COURT: Overruled.
MR. ERBEN: Except. Improper argument.
Petitioner contends that these statements are, in effect, a comment by the State on the petitioner's failure to testify.
Alabama Constitution of 1901 at § 6 declares:
 That in all criminal prosecutions, . . the accused shall not be compelled to give evidence against himself. . . .
Code 1975, § 12-21-220 states:
 On the trial of all indictments, complaints or other criminal proceedings, the *Page 1234 
person on trial shall, at his own request, but not otherwise, be a competent witness, and his failure to make such a request shall not create any presumption against him nor be the subject of comment by counsel. If the district attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within 30 days from entry of the judgment.
Where a direct comment has been made regarding petitioner's failure to testify, and the trial court has not promptly acted to cure such statement, then the conviction must be reversed.Whitt v. State, 370 So.2d 736 (Ala. 1979); Lamberth v. State,54 Ala. App. 233, 307 So.2d 43 (1975).
However, a problem arises where an indirect reference has been made regarding petitioner's failure to testify. InWashington v. State, 259 Ala. 104, 65 So.2d 704 (1953); Welchv. State, 263 Ala. 57, 81 So.2d 901 (1955); and Taylor v.State, 279 Ala. 390, 185 So.2d 414 (1966), this Court construed Code of Ala., Tit. 15, § 305 (now Code 1975, § 12-21-220) literally, thus creating the virtual identification doctrine.
This doctrine requires that any covert statement be construed against the defendant. "In other words, no matter what the jury might infer, there must virtually be a direct identification of the defendant alone as the individual who has not become a witness." King v. State, 45 Ala. App. 348, 352, 230 So.2d 538,541 (1970).
Under the facts of this case reversal is required. Our interpretation of the record leads to the conclusion that statements such as: "Have you heard anything?", and "Where was Bud Yarber?", could only refer to the testimony of the petitioner. Additionally, the statement "Where did they tell you they went?" [Emphasis added], could only refer to the petitioner and Miles. Because Miles testified, the above reference could only be to the petitioner. Furthermore, the trial court took no action to cure the effect of the prosecutor's comments on the jury. Thus, we cannot say that Yarber received the fair and impartial trial to which he was entitled.
Petitioner contends the trial court erred by allowing into evidence testimony concerning a witness' opinion as to a projectile extracted from the wall of petitioner's apartment without the prosecutor first laying a proper predicate as to chain of identification.
To establish a sufficient predicate for admission into evidence it must be shown that there was no break in the chain of custody of the projectile. Identification and continuity of possession must be sufficiently established to afford ample assurance of the authenticity of the item. Aaron v. State,271 Ala. 70, 122 So.2d 360 (1960); Dennison v. State, 259 Ala. 424,66 So.2d 552 (1953); Powell v. State, 51 Ala. App. 398,286 So.2d 73 (1973); Jemison v. State, 40 Ala. App. 581,120 So.2d 748 (1960).
The opinion testimony concerning the projectile should not have been admitted. There was no foundation laid as to the projectile and therefore any testimony comparing it with other bullets properly in evidence should have been excluded.
Petitioner further asserts that the police learned of the existence of the projectile found in his apartment through an illegal statement given by the petitioner. And, even though the trial court later reversed its ruling it gave no instructions to the jury to disregard this evidence. Thus, the effect is the same as if it were properly admitted into evidence. Petitioner contends it should have been excluded based upon the "fruit of the poisonous tree" doctrine.
In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407,9 L.Ed.2d 441 (1963), the United States Supreme Court set forth the test as to excludability of evidence under the "fruit of the poisonous tree" doctrine;
 [W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Page 1235 
371 U.S. at 488, 83 S.Ct. at 417. Citing Maguire, Evidence of Guilt 221 (1959). See also Owens v. State, 51 Ala. App. 50,282 So.2d 402 (1973); Havard v. State, 50 Ala. App. 147,277 So.2d 421 (1973); White v. State, 48 Ala. App. 334, 264 So.2d 565
(1972).
It is the contention of the State that the "fruit of the poisonous tree" doctrine does not require the exclusion of this evidence as it would have been discovered through other means, and thus there was no exploitation of the illegality. We believe that the recovery of the bullet from the wall was a direct result of an exploitation of information obtained from Yarber. We arrive at this decision based upon the following: (1) the police were directed to the bullet through specific statements made by Yarber; (2) the State had no search warrant for Yarber's apartment at the time the bullet was taken therefrom; and (3) the petitioner had not been apprised of his constitutional rights under Miranda v. State of Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Furthermore, the State's argument that because this projectile was not introduced into evidence it was not "fruit of the poisonous tree" and testimony concerning it should be allowed, is untenable. In Duncan v. State, 278 Ala. 145,176 So.2d 840 (1965), Justice Lawson stated:
 The exclusionary rule imposed upon the states . . . applies not only to the introduction into evidence of physical objects illegally taken, but also to the introduction of testimony concerning objects illegally observed.
278 Ala. at 161, 176 So.2d at 855.
Finally, petitioner asks us to consider his exception to the oral charge of the trial court, which was as follows:
 Now, your job as jurors is to go back into the jury room and take into account all of the evidence and testimony that you have heard in this case. It is your duty, ladies and gentlemen, when you go back there to try to reconcile all of the testimony from all of the witnesses so that it all speaks the truth to you. In other words, it is your duty to try to make all of the witnesses speak the truth.
* * * * * *
 Now, if you believe that any witness has wilfully testified to you falsely you have a right to disregard part of or any part of or all of that witness' testimony. But as I told you in the beginning, it is your duty to reconcile the testimony so that it all speaks the truth. [Emphasis added.]
Petitioner contends that the above requires the jury to reconcile testimony of all witnesses whether or not they spoke the truth, contrary to Alabama law.
We disagree with petitioner's reading of the oral charge; and after a consideration of the trial court's entire charge, we believe the law to have been correctly stated, and we do not believe the portion quoted above would be such as to require a juror to use testimony he believes false in rendering a decision.
The judgment of the Court of Criminal Appeals is reversed and the cause is remanded.
REVERSED AND REMANDED.
BLOODWORTH, FAULKNER, JONES, SHORES, EMBRY and BEATTY, JJ., concur.
MADDOX, J., concurs specially, with whom TORBERT, C.J., concurs.