[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1305 
On October 1, 1981, Ed Harrell, Jr. shot and killed Bessemer Police Officer Tommy Lee Thedford. He was indicted for the capital offense involving the murder of a police officer defined in Alabama Code § 13A-5-40 (a)(5) (1975). A jury found Harrell "guilty of the capital offense as charged in the indictment", and later recommended, by a vote of eleven to one, "that the penalty be life without parole." The trial judge refused to accept the jury's recommendation and sentenced Harrell to death by electrocution. On this appeal, thirteen issues are presented.
 I
The trial judge properly denied Harrell's request for funds to hire a psychiatrist or psychologist of his own choosing. InEx parte Clisby, 456 So.2d 95 (Ala. 1983), our Supreme Court held:
 "[T]he indigent defendant in a criminal case does not enjoy a constitutional right to have the aid of the State by the appointment of an expert for his exclusive benefit. Thigpen v. State, 372 So.2d 375
[385] (Ala.Cr.App.), cert. denied, 372 So.2d 387
(Ala. 1979), cert. denied, 444 U.S. 1206
[100 S.Ct. 690, 62 L.Ed.2d 660] (1980). The defendant may have that right where necessary for an adequate defense. Anno., 34 A.L.R.3d 1256 (1970). However, `there exists no constitutional right to the appointment of a private psychiatrist of the defendant's own choosing at public expense.' Satterfield v. Zahradnick, 572 F.2d 443 (4th Cir.), cert. denied, 436 U.S. 920 [98 S.Ct. 2270, 56 L.Ed.2d 762] (1978)."
Prior to trial, Harrell requested and received a mental examination at the Forensic Unit at Bryce Hospital at state expense. The Lunacy Commission found that Harrell "did possess the substantial capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law at the time of the particular offense charged", and that he was competent to stand trial. The Commission further found that Harrell was malingering; that he was "making conscious attempts to appear mentally ill by deliberately distorting his responses to test questions", and that "his suicidal gestures are a conscious attempt . . . to avoid prosecution on the charges pending." After the Commission made its report, defense counsel withdrew the plea of not guilty by reason of insanity. There is nothing in the record to even suggest some reason to doubt Harrell's competency or sanity.
 II
The trial judge did not violate Witherspoon v. Illinois,391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), in qualifying the jury venire. No venireman was excluded for cause solely because of his opposition to the death penalty.
 III
The trial judge properly denied defense counsel's challenge for cause of venireman Robert Ransom. In response to questions concerning the media accounts of the crime, Ransom stated that he "remember[ed] it being on television and in the newspaper" but did not "recall all the circumstances." Initially, he testified that he was "not positive I couldn't put it aside." However, on further questioning he stated, "I think I could be objective about it."
"[J]uror exposure to news accounts of the crime with which an accused is charged *Page 1306 
does not alone presumptively deprive the accused of due process of law." Gwin v. State, 425 So.2d 500, 503 (Ala.Cr.App. 1982), cert. quashed, 425 So.2d 510 (Ala. 1983). Ransom indicated that he could be objective and consequently was not subject to a challenge for cause. Bowen v. State, 274 Ala. 66, 145 So.2d 421
(1962).
 IV
The photographs of the interior of the slain officer's automobile were properly admitted into evidence. After being shot, Officer Thedford staggered into his car. The photographs were not immaterial but were illustrative of the crime scene and corroborative of the testimony of Officer Clifton M. Vasser, who was the first policeman to arrive on the scene.Arnold v. State, 348 So.2d 1092, 1095 (Ala.Cr.App.), cert. denied, 348 So.2d 1097 (Ala. 1977); C. Gamble, McElroy'sAlabama Evidence § 123.03 (1) (3rd ed. 1977). A photograph "is competent evidence of anything, of which it is competent and relevant for a witness to give a verbal description." 23 C.J.S.Criminal Law § 852 (1)(a) (1961).
 V
The photographs of the wound to Thedford's head were admissible, Palmore v. State, 283 Ala. 501, 506, 218 So.2d 830
(1969), even though they were taken immediately before the autopsy and were cumulative evidence based on an undisputed matter. Washington v. State, 415 So.2d 1175, 1180-81
(Ala.Cr.App. 1982).
 VI
The trial judge properly allowed the State to withdraw from evidence Harrell's written statement given after his arrest.
At a hearing outside the presence of the jury, the State proved the voluntariness of Harrell's statement. The statement was admitted into evidence without objection by defense counsel at this hearing. In this statement, Harrell stated that he was giving the pistol to Officer Thedford when it accidentally discharged. However, after the hearing and before the jury, the State never attempted to introduce this statement.
On cross examination of the officer who took the statement, defense counsel attempted to elicit testimony concerning the contents of the statement. The trial judge sustained the prosecutor's objection, and noted that "(t)here has been no mention of it made in the presence of the jury. The jury has not heard it." He then permitted the State to withdraw the statement from evidence.
The trial judge properly refused to allow Harrell to introduce the statement he made to the police after his arrest.Powell v. State, 51 Ala. App. 398, 400, 286 So.2d 73, cert. denied, 291 Ala. 796, 286 So.2d 75 (1973). "The acts, declarations, and demeanor of an accused before or after the offense, unless a part of the res gestae, are not admissible for him." Coats v. State, 253 Ala. 290, 295, 45 So.2d 35
(1950); Hill v. State, 156 Ala. 3, 46 So. 864 (1908). The declarations of the accused, made after the commission of the crime, are not admissible in his favor unless they constitute a part of the res gestae or are introduced by the State. Oliverv. State, 17 Ala. 587, 595-96 (1850). Although frequently said to constitute self-serving declarations, Grooms v. State,228 Ala. 133, 152 So. 455 (1934), Hill v. State, 194 Ala. 11,69 So. 941 (1915), statements made by the accused, after the commission of the crime and not as part of the res gestae, fit the classic definition of hearsay. McElroy, §§ 242.01, 242.02.
It is in the discretion of the trial judge to permit the withdrawal of evidence. 23 C.J.S. Criminal Law § 1040 (1961). See also Frost v. State, 225 Ala. 232, 237, 142 So. 427 (1932).
 VII
Since Harrell's statement to the police was not admissible in his favor, the refusal of the trial judge to allow defense counsel to cross examine a State's witness about this matter did not restrict Harrell's Sixth Amendment right of confrontation. *Page 1307 
Hearsay testimony is not admissible over objection even on cross examination.
Although the accused's right of confrontation may be violated if restrictions on his right of cross examination limit relevant inquiries into guilt or innocence, United States v.Pritchett, 699 F.2d 317, 321 (6th Cir. 1983), or the credibility of witnesses, Davis v. Alaska, 415 U.S. 308,316-17, 94 S.Ct. 1105, 1110-11, 39 L.Ed.2d 347 (1974), the trial judge has discretion to limit cross examination after the accused has been afforded the "constitutionally required threshold level of inquiry." United States v. Tracey,675 F.2d 433, 437 (1st Cir. 1982).
 VIII
On October 3, 1981, the day after Harrell was arrested and jailed for the murder, Sergeant Vasser went to the county jail in Bessemer at Harrell's request, read him his Miranda rights, and obtained a waiver. Harrell then told the sergeant that "he wanted to show us where the gun is." Vasser obtained an order from a circuit judge and took "Harrell from the county jail under protective custody so he could show us what he had done with the pistol."
There is no factual or legal merit to the contention that the statement was inadmissible because Harrell "had been in custody for some two days" and "had not been afforded at that time the right of counsel." At the hearing on the voluntariness of this statement, there was absolutely no evidence to indicate anything other than full and complete compliance with both the spirit and letter of Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Harrell never requested counsel and the rule of Edwards v. Arizona, 451 U.S. 477,101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) was not violated.
 IX
The police recovered the murder weapon from Doc Scott, the son of L.T. Scott, who had purchased the pistol from Harrell after the murder. Scott positively identified the pistol introduced at trial: "And that is the one I had. If it isn't it is one just like it. Ain't no difference is what I'm telling you." There was no break in the chain of custody and Scott's testimony gives us no cause to believe otherwise. The identification and continuity of possession of the pistol were sufficiently established to afford not only ample but positive assurance of its authenticity. Ex parte Yarber, 375 So.2d 1231,1234 (Ala. 1979).
 X
The element of intent to kill was a question for the jury and therefore, Harrell's motion to exclude was properly denied. Here, Mrs. Parsley, Mrs. Dykes, and Naomi Jones testified that they saw Harrell aim or raise a pistol to Officer Thedford's head and shoot him in the face from a distance of three to five feet. "The unjustifiable, intentional, and deliberate use of a deadly weapon, . . . gives rise to an inference of the deliberate and premeditated intent to take life necessary to make a resultant killing murder in the first degree." Sandersv. State, 392 So.2d 1280, 1283 (Ala.Cr.App. 1980) (quoting F. Wharton, The Law of Homicide, § 152 (3rd ed. 1907)). See also Alabama Code § 13A-11-71 (1975) ("the fact that he was armed with a pistol and had no license to carry the same shall be prima facie evidence of his intention to commit said crime of violence"). It was for the jury to determine the truth of Harrell's testimony that the shooting was accidental. Harrellv. State, 160 Ala. 91, 49 So. 805 (1909).
 XI
The trial judge did not err in finding that the aggravating circumstances outweighed any mitigating circumstances. The trial judge specifically found that there were no statutory mitigating circumstances as listed in § 13A-5-51 and §13A-5-52, and that there were no "un-enumerated mitigating circumstances."
Harrell asserts that the trial judge "ignored any testimony . . . that (1) the gun discharged accidentally, and (2) Harrell did not know that Thedford was a police officer." *Page 1308 
We addressed a similar issue in Cochran v. State, (Ala.Cr.App. 1984):
 "It is not required that evidence submitted by the accused as a nonstatutory mitigating circumstance be weighed as a mitigating circumstance by the trial judge. Mikenas v. State, 407 So.2d 892, 893
(Fla. 1981).
 "`Although consideration of all mitigating circumstances is required by the United States Constitution, Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the decision of whether a particular mitigating circumstance in sentencing is proven and the weight to be given it rest with the judge and jury. Lucas v. State, 376 So.2d 1149 (Fla. 1979).' Smith v. State, 407 So.2d 894, 901 (Fla. 1981).
 "`The fact that the sentencing order does not refer to the specific types of non-statutory "mitigating" evidence petitioner introduced indicates only the trial court's finding the evidence was not mitigating, not that such evidence was not considered. . . . What one person may view as mitigating, another may not.' Dobbert v. Strickland, 718 F.2d 1518, 1524 (11th Cir. 1983)."
Implicit in a trial judge's finding of any mitigating circumstance is the finding that such a circumstance actually exists. Here, there was an abundance of testimony that Thedford identified himself as a police officer. There was even Harrell's own testimony that "I knew who he was." There was also ample evidence, both direct and circumstantial, that Harrell intentionally shot Officer Thedford. There is only Harrell's own testimony that he did not know Thedford was a police officer and that the shooting was accidental. The trial judge knew that the Lunacy Commission had found that Harrell was malingering and the judge had observed his demeanor on the witness stand. The judge could have and probably did disbelieve Harrell's testimony. Since that testimony was all that supported the existence of the asserted mitigating circumstances, the trial judge could have properly found that Harrell simply did not convince or persuade him of the existence of any mitigating circumstance. We do not view this as a case where the trial judge rejects evidence of mitigating circumstances or refuses to recognize such evidence [and distinguish the present case from that situation].
Our assessment of the trial judge's action is confirmed by the fact that in his instructions at the sentencing phase of the trial, he charged the jury: "Of course, you can draw upon the testimony you heard during this trial. The defendant has taken the stand and offered mitigating factors for your consideration. Your task now, . . . [is] to weigh the aggravating circumstance proven or the circumstance proven if you find them to be proven and weigh them against the mitigating circumstances proven to your satisfaction." Merely because an accused proffers evidence of a mitigating circumstance does not require the judge or the jury to find the existence of that fact. Mikenas, supra; Smith, supra.
The trial judge found the existence of one aggravating circumstance: "The defendant was previously convicted of another felony involving the use or threat of violence to the person in that he was previously convicted of an Assault with Intent to Rob in 1972 and Murder in 1977." The trial judge did find that "(t)he defendant does have a significant history of prior criminal activity" but employed that finding to negate the mitigating circumstance defined in § 13A-5-51 (1) of no significant history of prior criminal activity. He did not consider that an aggravating circumstance. This record reflects no error by the trial judge in his weighing of the aggravating and mitigating circumstances to determine sentence.
 XII
Harrell asks this Court to recognize as a mitigating circumstance and take note of the fact that he "fully co-operated with law enforcement officials in locating the gun which was used in Thedford's shooting." The factor was not presented or argued to the trial judge as a mitigating circumstance. We do not consider it in mitigation of the offense Harrell committed. He attempted to have this testimony *Page 1309 
suppressed, and, having lost, now claims that it constitutes a mitigating circumstance. Foster v. Strickland, 707 F.2d 1339,1347-51 (11th Cir. 1983) ("We decline to regard petitioner's pretrial confession as a factor in mitigation of his crime because petitioner attempted to suppress this confession").
 XIII
The trial judge's sentence of death despite the jury's recommendation of life without parole was constitutional. Murryv. State, 455 So.2d 53 (Ala.Cr.App. 1983). See also Dobbert v.Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).
"While the jury's recommendation concerning sentence shall be given consideration [by the trial judge], it is not binding on the court." Alabama Code § 13A-5-47 (e) (1975). The trial judge considered the jury's recommendation in sentencing Harrell to death. In his written finding of facts required by § 13A-5-47
(d), the judge stated: "The Court finds that the aggravating circumstance outweighs the mitigating circumstances and the jury's recommendation that the defendant be sentenced to life without parole."
In Murry, supra, this Court determined that the capital offense involving the murder of a police officer as defined in § 13A-5-40 (a)(5) is not unconstitutionally vague and arbitrary. Harrell's arguments of unconstitutionality were answered in that opinion.
 XIV
In accordance with our statutory duty in reviewing a case in which the death penalty has been imposed, Alabama Code §13A-5-53 (1975), we make the following findings:
1. We have searched the record for any plain error or defect in the proceedings, whether or not brought to the attention of the trial judge, and have found no error which has or probably has adversely affected Harrell's substantial rights. Rule 45A, A.R.A.P. This search was of the entire record, including both the guilt and sentencing phases of this case.
2. The trial judge's findings concerning the aggravating and mitigating circumstances are supported by the evidence.
3. Our review convinces us that death is the proper sentence in this case. Before reaching this conclusion we have made the following determinations as required by § 13A-5-53 (b):
(3a) There is no evidence or contention that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.
(3b) Our independent weighing of the aggravating and mitigating circumstances indicates that death is the proper sentence.
(3c) The sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. See Murry v.State, 455 So.2d 53 (Ala.Cr.App. 1983); Dobard v. State,435 So.2d 1338 (Ala.Cr.App. 1982), affirmed, 435 So.2d 1351 (Ala. 1983); Magwood v. State, 426 So.2d 918 (Ala.Cr.App. 1982), affirmed, 426 So.2d 929 (Ala.), cert. denied, 462 U.S. 1124,103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983).
Our review convinces us that the judgment of the circuit court is due to be affirmed.
AFFIRMED.
All Judges concur.