Barby L. Miller was convicted for the manslaughter of Bessie Hamil and sentenced to five years' imprisonment. Because the prosecution failed to establish a proper chain of custody to support the introduction into evidence of a sample of the defendant's blood, the judgment of the circuit court is reversed.
It is undisputed that, on July 31, 1984, the defendant lost control of the truck he was driving, ran off the pavement on his side of the road, drove back onto the road, skidded across the road into the other lane, and crashed into an oncoming automobile in which Mrs. Hamil was a passenger.
In the collision, the defendant was injured. He was taken to the Clay County Hospital where Glenn Pittard, the chief laboratory technologist, took a sample of his blood and placed it in "a vacutainer type instrument." Pittard wrapped the container with Scotch tape "so that the Trooper will know if that seal has been broken and the blood sample tampered with." He gave the sample to State Trooper Felix Bell.
Trooper Bell took the sample to the Jacksonville Trooper Post, "put it in an envelope, sealed it and initialed it." Initially, the Trooper testified that he watched while the envelope was addressed to the Forensic Science Laboratory in Auburn. Later, he was recalled and testified that he had refreshed his recollection and the sample had been mailed to the forensic lab in Birmingham. He placed the envelope in "the mail" but this was "not the U.S. Mail." Trooper Bell stated that he saw the envelope "placed in the regular outgoing mail for . . . [his] department."
Dr. James Buttram, a state toxocologist in Birmingham, testified that he received "this container in the mail on Thursday, August 2, 1984." The return address indicated that it came from Trooper Bell. The blood in the container was tested and had a blood-alcohol level of .22%.
When the State offered to introduce the blood sample into evidence and when the prosecutor asked Dr. Buttram to state his conclusion on whether or not the blood sample contained alcohol, defense counsel objected on the grounds that "[t]he proper predicate has not been properly authenticated." That objection should have been sustained.
 "One of the important factors in direct analyses of specimens of blood is the protection from contamination of a specimen at the time of taking, during transportation to the chemist, and at the time of analysis. The attorney offering chemical test evidence must be able to show proper protection of the specimen within recognized standards from the time the needle was inserted into the flesh of the subject person until the chemist arrived at his ultimate conclusion after the analysis." R. Donigan, Chemical Tests and the Law p. 71 (2nd ed. 1966).
Appellate courts have "consistently" rejected the argument that the "failure of the evidence to follow a specimen through the mails every step of the way to the chemist's laboratory should be the basis for rejection of chemical test evidence" when *Page 1205 
the proof shows the specimen was placed in the proper type of sealed container so that the possibility of contamination during transit was eliminated. Chemical Tests at 76. The courts "have followed the legal presumption that articles shipped by mail [United States Postal Service] are delivered in substantially the same condition as when placed in the mail box or post office." Chemical Tests at 76, and cases cited at pp. 76-77. Here, the U.S. Mail was not used and we know of no similar presumption attaching to the "regular outgoing mail" for a state agency or department.
"To establish a sufficient predicate for admission into evidence it must be shown that there was no break in the chain of custody. * * * Where `missing links' are involved in the chain of custody the question presented is one of admissibility rather than credibility." Whetstone v. State, 407 So.2d 854,859-60 (Ala.Cr.App. 1981) (Emphasis in original); Mauldin v.State, 402 So.2d 1106, 1110-11 (Ala.Cr.App. 1981). See also Exparte Yarber, 375 So.2d 1231, 1234 (Ala. 1979). The break in the chain of custody in this case cannot be considered only a "minor break" which goes to weight and not admissibility.United States v. Clark, 732 F.2d 1536, 1543 (11th Cir. 1984).
The admission of the results of the chemical test of the defendant's blood was, quite simply, "devastating" and cannot be considered harmless. Whetstone, 407 So.2d at 860. Obviously, the degree and extent of the defendant's intoxication, if any, was highly relevant and influential in the jury's determination of whether he was guilty of criminal recklessness, criminal negligence, or mere negligence in causing the collision and resulting death.
The judgment of the circuit court is reversed and this cause is remanded for further proceedings.
REVERSED AND REMANDED.
All Judges concur.