Julian R. ("Randy") Suttle was convicted of vehicular homicide arising out of the death of Howard Deavers and sentenced to five years' imprisonment. This conviction must be reversed because the prosecution failed to establish the proper chain of custody for the introduction of a blood sample allegedly taken from Suttle.
Shortly after 11:00 p.m. on April 8, 1987, Suttle's truck collided with a Toyota Corolla automobile in which Deavers was a passenger. Trooper Elizabeth Cobb later transported Suttle to the Selma Medical Center, arriving there around 12:25 a.m. After a cut on Suttle's face was sutured, Nurse Barbara Middleton took blood samples from him. Nurse Middleton testified that these samples were taken "after 1:00 a.m." on April 9, a Thursday, and that she used two vacuum-type vials to extract the samples. Nurse Middleton labelled the vials with Suttle's name and gave them to Trooper Cobb. The vials were not taped at this time.
Trooper Cobb was deceased at the time of trial and thus did not testify. Toxicologist Laura Shevlin testified that on Monday, April 13, 1987, she retrieved from the Department of Forensic Sciences post office box in Auburn, Alabama, a gray cardboard mailing cylinder containing two vials of blood labelled "Randy Suttle, 4-9-87." The mailing cylinder "was sealed with white tape that was labelled 'E.S.C.' " Although not specifically so stated by Ms. Shevlin, it appears from the record that the two vials were also taped at the time she received them. Ms. Shevlin was unable to testify as to where the vials had been before she received them, when they were mailed or who mailed them. Nevertheless, over strenuous objection by Suttle, the vials were admitted and Ms. Shevlin was permitted to testify that she tested the blood sample in one of the vials and found it to have a blood alcohol level of .29%. She was further permitted to testify as to what effect a blood alcohol level of .29% has on a person.
The principles governing this issue were set forth in Exparte Williams, 548 So.2d 518, 520 (Ala. 1989):
 "The purpose of the establishment of the chain of custody is announced in Ex parte Williams, 505 So.2d 1254 (Ala. 1987):
 " 'The purpose for requiring that the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence. Williams v. State, 375 So.2d 1257 (Ala.Cr.App.), cert. denied, 375 So.2d 1271
(Ala. 1979); Tate v. State, 435 So.2d 190
(Ala.Cr.App. 1983); Smith v. State, 446 So.2d 68
(Ala.Cr.App. 1984). "The evidence need not negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather must prove to a reasonable probability
that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain." Slaughter v. State, *Page 1199 411 So.2d 819, 822 (Ala.Cr.App. 1981) (emphasis supplied).'
"505 So.2d at 1255.
 "A showing that there was no break in the chain of custody is required to establish a sufficient predicate for admission into evidence. Ex parte Yarber, 375 So.2d 1231 (Ala. 1979), reversed on other grounds, 437 So.2d 1330 (Ala. 1983). The identification of the evidence and continuity of possession must be sufficiently established in order to assure the authenticity of the item, Ex parte Yarber, supra.
 "This state employs two separate standards for testing the chain of custody — the weak link test announced in Sommer v. State, 489 So.2d 643
(Ala.Crim.App. 1986), and the missing link test announced in Mauldin v. State, 402 So.2d 1106
(Ala.Crim.App. 1981).
 "Where a weak link in the chain of custody is found, the weight and credit afforded the evidence, rather than its admissibility, is questioned. Sommer, supra. Where a break in the chain of custody, or a 'missing link' in the chain of custody is shown, the admissibility of the evidence is questioned, Mauldin, supra."
With regard to specimens taken from the human body, it is also incumbent upon the prosecution to show that the specimen analyzed was in fact the specimen taken from the defendant. In such cases, "[t]he 'chain of custody' involves 'the necessity of proving where and by whom the specimen was kept and through whose hands it passed.' J. Richardson, Modern ScientificEvidence, Section 13.14a (2d ed. 1974)." Gothard v. State,452 So.2d 889, 890 (Ala.Cr.App.), cert. stricken, 450 So.2d 479
(Ala. 1984). See generally, A. Moenssens, F. Inbau J. Starrs,Scientific Evidence in Criminal Cases § 1.18(2)(c) (3d ed. 1986). "[W]here the substance analyzed has passed through several hands the evidence must not leave it to conjecture asto who had it and what was done with it between the taking andthe analysis." Rodgers v. Commonwealth, 197 Va. 527,90 S.E.2d 257, 260 (1955) (emphasis added).
The importance of the chain of custody of a blood sample was demonstrated by this court in Miller v. State, 484 So.2d 1203
(Ala.Cr.App. 1986). There a lab technician took a blood sample from the defendant, placing it in " 'a vacutainer type instrument' " which he then wrapped in tape and gave to a trooper. The trooper took the sample to the trooper post, " 'put it in an envelope, sealed it and initialed it,' " then placed it "in 'the mail,' " meaning the department's outgoing mail, not the United States mail. The toxicologist "received 'this container in the mail' " and determined the blood alcohol level of the sample. 484 So.2d at 1204.
We held that the prosecution had failed to establish the requisite chain of custody because there was no showing of the use of the United States mail so as to raise the presumption that " 'articles shipped by mail [United States Postal Service] are delivered in substantially the same condition as when placed in the mail box or post office.' " 484 So.2d at 1205.
 " 'To establish a sufficient predicate for admission into evidence it must be shown that there was no break in the chain of custody. * * * Where "missing links" are involved in the chain of custody the question presented is one of admissibility rather than credibility.' Whetstone v. State, 407 So.2d 854, 859-60 (Ala.Cr.App. 1981) (emphasis in original); Mauldin v. State, 402 So.2d 1106, 1110-11 (Ala.Cr.App. 1981). See also Ex parte Yarber, 375 So.2d 1231, 1234 (Ala. 1979)."
Id. Accord, Gothard v. State, 452 So.2d at 891.
Here, as in Miller, there is a "missing link" in the chain of custody. We recognize the difficulty faced by the prosecution in establishing the chain of custody in view of the intervening death of Trooper Cobb. However, absolutely no effort was made by the prosecution to account for the whereabouts of the samples during the four days between the time they were taken by Nurse Middleton and the time they were received by Ms. Shevlin. Compare People v. Porter, 46 A.D.2d 307, 362 N.Y.S.2d 249
(1974) (where nurse gave blood *Page 1200 
sample to officer and officer delivered sample to chemist, from whom he obtained a receipt, and chemist's son testified as to results of test from the deceased chemist's log book). InMiller, we concluded that the break in the chain of custody, which was relatively small in comparison to the gaping hole in the present case, could not "be considered only a 'minor break.' " 484 So.2d at 1205. We can only reach the same conclusion in this case. Where a "vital link in the chain of possession is not accounted for," there can be no reasonable probability that "the evidence analyzed was the evidence originally received." Robinson v. Commonwealth, 212 Va. 136,183 S.E.2d 179, 180 (1971). Moreover, in view of Shevlin's testimony on the effect of the blood alcohol level on the body, the error in the admission of the samples cannot be deemed harmless. Miller, 484 So.2d at 1205; Whetstone v. State,407 So.2d 854, 860 (Ala.Cr.App. 1981).
Although not raised as an issue either at trial or on appeal, it appears that the indictment charges Suttle with vehicular homicide while driving "[u]nder the influence of alcohol," § 32-5A-191(a)(2), Ala. Code (1975), rather than vehicular homicide while driving with "0.10 percent or more by weight of alcohol in his blood," § 32-5A-191(a)(1). See e.g. Ex parteBush, 431 So.2d 563, 564 (Ala.), cert. denied, 464 U.S. 865,104 S.Ct. 200, 78 L.Ed.2d 175 (1983); Duren v. State,507 So.2d 111, 120 (Ala.Cr.App. 1986), affirmed, 507 So.2d 121 (Ala.), cert. denied, 484 U.S. 905, 108 S.Ct. 249, 98 L.Ed.2d 206
(1987). In a prosecution under § 32-5A-191(a)(2), it is not necessary to introduce evidence of the defendant's blood alcohol level. See Ex parte Buckner, 549 So.2d 451 (Ala. 1989).
For the reasons stated above, the judgment of the circuit court is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.