TYSON, Judge.
Michael J. Morgan was indicted for sexual abuse in the first degree in violation of § 13A-6-66, Code of Alabama 1975. He was found guilty “as charged in the indictment” and was sentenced to three years’ imprisonment. This conviction must be reversed, because the State failed to establish the proper chain of custody for the introduction of a urine sample allegedly taken from the victim.
E.S., who was a patient at Dale County Hospital, was asked to give a urine sample on Friday, March 3,1989. This sample was ordered after E.S. complained of being sexually abused and reported that she was given two intraveneous injections, prior to the abuse, which made her dizzy and caused her vision to become “blurry.” She testified that she gave the cup containing *860 her specimen to her mother and that her mother promptly left the room with it. Her mother testified that her daughter gave her the cup with the specimen and that the cup had a lid. She further testified that she gave the specimen to someone at the nurse’s station. She stated that she probably gave the specimen to one of the two nurses she had spoken with that evening.
Lisa Gowan, a registered nurse at Dale County Hospital, testified that she gave E.S. an empty cup for a urine specimen. She testified that E.S.’s mother brought her the specimen. She said that she then labeled the cup and took it to the laboratory. Glenn Wellman, a lab technician at Dale County Hospital, testified that he walked into the laboratory and the specimen was on the counter. The sample was labeled. He testified that he put security tape on the sample, relabeled it with an Alabama Reference Laboratory label, put it in the refrigerator, and noted it in the log book. A proper chain of custody was established'up until this point. He then testified that normally a courier from the reference laboratory would look in the log book and pick up the samples the next morning.
The next person to testify regarding the specimen was Allen Valaer, supervisor of the toxicology department at the Alabama Reference Laboratory in Montgomery, Alabama. Although he testified that a requisition form from Dale County Hospital with the patient’s name on it came with the urine specimen, he also testified that he had never seen the specimen. He did not know when the specimen had arrived, who brought the specimen to the laboratory, or who received the specimen. Thus, there could also be no testimony as to whether the security seal was still intact when the specimen arrived at the reference laboratory. Despite the appellant’s objections, the results of the tests done on the specimen were admitted and Mr. Valaer was permitted to testify that benzodiazepine metabolite (a tranquilizer) was found in the sample.
The purpose of the establishment of the chain of custody is announced in Ex parte Williams, 505 So.2d 1254 (Ala.1987):
“The purpose for requiring that the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence. Williams v. State, 375 So.2d 1257 (Ala. Cr.App.), cert. denied, 375 So.2d 1271 (Ala.1979); Tate v. State, 435 So.2d 190 (Ala.Cr.App.1983); Smith v. State, 446 So.2d 68 (Ala.Cr.App. 1984). ‘The evidence need not negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather must prove to a reasonable probability that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain.’ Slaughter v. State, 411 So.2d 819, 822 (Ala.Cr.App.1981) (emphasis supplied).”
505 So.2d at 1255 (quoting this court in Williams, 505 So.2d at 1253).
A showing that there was no break in the chain of custody is required to establish a sufficient predicate for admission into evidence. Yarber v. State, 375 So.2d 1231 (Ala.Crim.App.1978), reversed on other grounds, 437 So.2d 1330 (Ala. 1979). The identification of the evidence and continuity of possession must be sufficiently established in order to assure the authenticity of the item. Yarber, supra.
This state employs two separate standards for testing the chain of custody — the weak link test announced in Sommer v. State, 489 So.2d 643 (Ala.Crim.App.1986), and the missing link test announced in Mauldin v. State, 402 So.2d 1106 (Ala. Crim.App.1981).
Where a “weak link” in the chain of custody is found, the weight and credit afforded the evidence, rather than its admissibility, are questioned. Sommer, supra. Where a break or a “missing link” in the chain of custody is shown, the admissibility of the evidence is questioned. Mauldin, supra. Ex parte Williams, 548 So.2d 518, 520 (Ala.1989).
When specimens taken from the human body are involved, the prosecution must show that the specimen which was analyzed came from the person from whom *861 the specimen was obtained. Suttle v. State, 565 So.2d 1197 (Ala.Crim.App.1990). “[W]here the substance analyzed has passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis.” Suttle at 1199 (emphasis in original), quoting Rodgers v. Commonwealth, 197 Va. 527, 90 S.E.2d 257, 260 (1955).
Glenn Wellman testified that he did not see who took the specimen from the laboratory. He further testified that the courier does not normally sign the log book when the samples are removed. There js nothing in the record to account for the whereabouts of the specimen between the time it was logged in at the hospital and the time it was received by the reference laboratory. There was no testimony as to who received the specimen at the reference laboratory and whether it was intact when it was received. This break in the chain of custody cannot be considered a minor break. See, e.g., Suttle; Miller v. State, 484 So.2d 1203 (Ala.Crim.App.1986). When such a “vital link” in the chain of custody was not accounted for, there could not be a reasonable probability that the specimen analyzed was the specimen that originated at the hospital. See Suttle. See, generally, Sommer.
In view of Mr. Valaer’s testimony as to the presence of a tranquilizer in E.S.’s urine and E.S.’s testimony, which was disputed by the appellant, that the appellant gave her intravenous injections prior to the sexual abuse and that they made her dizzy and caused her vision to become “blurry,” the error in the admission of the specimen cannot be deemed harmless. Suttle; Miller.
For the reasons stated above, the judgment in this case is due to be reversed and this cause is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.