BOWEN, Judge.
Elbert Wallace was convicted of the manslaughter of Brenda Wiley Mitchell and of the third degree assault of Kellie McCarthy. These convictions grew out of a vehicular homicide. Wallace was sentenced to 15 years’ imprisonment for the manslaughter conviction and 12 months’ imprisonment for the assault conviction, the sentences to run concurrently. He raises two issues on this appeal from those convictions.
I.
The defendant argues that the results of a blood-alcohol test were inadmissible because the samples were taken against his will and without his permission.
Conflicting evidence was presented on this issue. The defendant was arrested and charged with DUI at the scene of the collision. Because of his injuries, he was taken to a hospital. There is evidence that when he arrived at the hospital he was alert and conscious. There is also evidence that a short time later, when the blood sample was taken, the defendant was incoherent and semiconscious, and that he had pulled the intravenous tube from his arm and had to be restrained. However, there was also testimony that when the nurse attempted to get the defendant’s consent to the blood test, the defendant was “unable to wake up.”
Although the defendant argues that the samples were taken without his consent, this is not a case of physical coercion. Compare Thrower v. State, 539 So.2d 1127 (Ala.Cr.App.1988). Subsection (b) of § 32-5-192, Alabama Code 1975, Alabama’s implied consent law, provides: “Any person who is dead, unconscious or who is otherwise in a condition rendering him incapable of refusal, shall be deemed not to have withdrawn the [implied] consent provided by subsection (a) of this section and the test or tests may be administered, subject to the provisions of this division.” Although Alabama's implied consent law, § 32-5-192, provides that a motorist may refuse a blood test, it does not require the motorist’s express consent to such a test. See Hill v. State, 366 So.2d 318, 322 (Ala.1979) (“States which have statutory provisions similar to the Alabama Chemical Test for Intoxication Act have likewise held there is no statutory right of refusal. ... We agree with such an interpretation.”). The factual determinations of the trial court concerning the defendant’s alleged refusal of the blood test are based *970 on conflicting evidence and are, therefore, entitled to great weight and will not be disturbed on appeal unless clearly contrary to the evidence. Cf. Calhoun v. State, 460 So.2d 268, 270 (Ala.Cr.App.1984).
II.
The defendant further argues that the State failed to establish a proper chain of custody of the blood samples. Nurse Roberts drew the blood and handed two sealed samples to Officer Meadows. On Saturday morning, Meadows placed the tubes containing the blood samples, which had been sealed inside a styrofoam box (a “DUI evidence kit”), in a refrigerator at City Hall where the kit remained over the weekend. The refrigerator was in the hallway, was not locked or secured, and was accessible to any number of city employees. On Monday morning, Officer Meadows retrieved the still-sealed kit and delivered it to the forensics expert who tested the blood samples. The expert testified that there was nothing to indicate that the kit had been tampered with.
Although the evidence indicates some carelessness in the storage of the blood samples, we find that the evidence of the test results was properly admitted. “ ‘[I]t is to be presumed that the integrity of evidence routinely handled by governmental officials was suitably preserved “[unless the accused makes] a minimal showing of ill will, bad faith, evil motivation, or some evidence of tampering.” ’ ” United States v. Roberts, 844 F.2d 537, 549-50 (8th Cir.), cert. denied, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988). Recently, this Court discussed in detail the requirements of a proper chain of custody for a blood sample. Moorman v. State, 574 So.2d 953 (Ala.Cr.App.1990), and cases cited therein. Applying those principles to the facts of this case, we find that the State proved to a reasonable probability that the blood samples were the same as, and not substantially different from, the samples as they existed at the beginning of the chain. Ex parte Williams, 548 So.2d 518, 520 (Ala.1989); Suttle v. State, 565 So.2d 1197 (Ala.Cr.App.1990).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.