Bobby Joe Smith was charged by indictment with unlawfully obtaining or exercising unauthorized control over a firearm, to-wit, a .357 Magnum pistol, the property of Timothy Tate, with intent to deprive the owner of said firearm, contrary to §13A-8-4, Code of Alabama 1975, as amended.
At trial the jury found the appellant "guilty of theft of property in the second degree as charged in the indictment" and, after a habitual felony offender hearing, the trial judge sentenced the appellant to five years' imprisonment in the penitentiary.
The facts in this case are as set forth in appellant's brief, to which the State has agreed as constituting a correct statement of the facts.
 "Timothy Tate testified that he had bought a .357 Smith Wesson pistol at Helms' Guns in September 1984. On October 20th, he noticed the gun was missing from its accustomed place under the passenger's seat of his car. At the time, Tate and the appellant were picking up Larry and Sonya Adams, who were going to accompany them to a square dance in Abbeville. He did not see the gun again until Jo Jo Smith, the appellant's brother, gave the gun back to him, about a month later. On cross-examination, the witness admitted that he last saw the gun a few days before the square dance and that during that interval he had been driving the car around Headland and Dothan. "Lt. Neil Forrester of the Headland Police Department stated that he took a statement from the appellant on November 26, 1984. Lt. Forrester read the following statement into the record: *Page 1313 
`I took the gun out of Tim Tate's car on 10-21 of '84. Tim took me home, he in, I got out of the car. I took the gun.' "According to Lt. Forrester, appellant himself wrote out the statement.
 "Jo Jo Smith testified that he found the gun in Tim Tate's car when he was running an errand for Tate. He had put some change between the two front seats and found the gun when he reached down to retrieve the change from where it had rolled under the passenger's seat. On cross-examination, he denied having told Tate that he found the gun in a black box which belonged to his brother. "Tim Prescott, who was acquainted with the Smith brothers and the complaining witness, said that the owner of the gun told him on the Sunday before appellant's arrest that he found the gun under the front seat of the car. On cross-examination, Prescott denied having talked over his testimony with the appellant before trial.
 "Peggy Smith, the appellant's mother, also remembered Tate telling her that he found the gun under the seat of his car. According to her, he did not withdraw his complaint with the police department for fear of getting in trouble for reporting it stolen when it had merely been misplaced.
 "On rebuttal, Timothy Tate testified that Jo Jo Smith told him he got the gun out of a black box kept at his mother's house. Moreover, he asked Tate to tell the police he found it under the passenger's seat. At that time, Tate told Roger Glass of the Headland Police Department that he had found the gun. He went back later to the police and told them Jo Jo had brought it to him, after Tate conferred with his employer."
The appellant's counsel asserts two matters as error in this cause and asks for this court to reverse this case based on the two matters hereinafter set forth.
 I
The appellant's first assignment of error concerns a ruling by the trial court on the court's excusing one Eva Gunn as a juror because of her inability to read the English language. Record 5 reads as follows:
"THE COURT: All right.
 "MR. CRESPI: Your Honor, out of the presence and hearing of the Jury, I would like to go ahead on my motion for the Jury Qualifications —
 "THE COURT: Are you talking about not speaking, reading the English language?
"MR. CRESPI: Yes, sir.
"THE COURT: All right. Put it in the Record.
 "MR. CRESPI: All right. The Defendant reserves an exception to the Court's excusing a Juror Eva Gunn, for her inability to read the English language. The Defendant challenges the constitutionality of the Alabama Jury Qualification Statute that purports to excuse such Jurors from service.
 "(Thereupon, a recess was called and taken by all parties. Upon completion of said recess, all parties returned to the presence and hearing of the Court Room and the following proceedings were had outside the presence and hearing of the Trial Jury, to-wit:)"
". . ."
Section 12-16-60, Code of Alabama, 1975 as amended 1978, in pertinent part reads as follows:
 "(a) A prospective juror is qualified to serve on a jury if the juror is generally reputed to be honest and intelligent and is esteemed in the community for integrity, good character and sound judgment and also:
". . .
 "(2) Is able to read, speak, understand and follow instructions given by a judge in the English language.
". . ."
The Supreme Court of Alabama in the case of Spicer v. State,188 Ala. 9, 65 So. 972 (1914) has determined that the provisions of the foregoing statute are mandatory. See alsoKittle v. State, 362 So.2d 1260 (Ala.Crim.App. 1977), rev'd. on other *Page 1314 
grounds, 362 So.2d 1269 (Ala. 1978). In view of this determination by the Supreme Court of Alabama the trial judge had no alternative but to excuse Eva Gunn from jury service in this cause.
The appellant argues that in excusing this particular juror under the foregoing statute, the State of Alabama unlawfully discriminated against the appellant because certain racial minorities, namely blacks, have a higher percentage of illiteracy than white citizens and, therefore, such statute violates the equal protection clause of the Fourteenth Amendment of the United States Constitution.
Appellant's counsel cites us to no decided case which upholds his contention. Our research indicates that we have found none either. Therefore, under the Code section hereinabove referred to and the decision of the Supreme Court of Alabama, we adhere to this prior determination and hold that the trial court properly excused Eva Gunn in this cause.
 II
Secondly, appellant's counsel asserts that the district attorney made an impermissible comment on the alleged failure of the appellant to take the stand during trial. The record in this case reads as follows: (R. 38-39).
 "During Mr. Sorrells' closing argument to the Jury, the following objection occurred, to-wit:
 "MR. CRESPI: Your Honor, I object to the statement there has been no denial in this case that Bobby Joe Smith stole the gun. That is an impermissible comment on the Defendant's not taking the stand. We object and ask the Court to instruct the Jury on that.
"MR. SORRELLS: Can we approach the Bench?
 "MR. CRESPI: I ask to continue on the Record with any Bench Conference.
 "MR. SORRELLS: I have no problem with that, Your Honor. I am referring to the Defendant's statement, Your Honor. The statement in this case was that the Defendant said stuff.
 "THE COURT: Yes. The statement is in evidence and is admissible. I overrule you.
"MR. CRESPI: Your Honor, I move for a Mistrial.
"THE COURT: I overrule you. Go ahead.
 "MR. SORRELLS: Continues his closing argument to the jury.
"THE COURT: Mr. Crespi.
"MR. CRESPI: States the Defendant's Case to the Jury.
"THE COURT: All right."
As may be seen in reviewing the above argument, the district attorney was referring to the appellant's statement which had been given to Officer Neil Forrester in the office of the Chief of Police at Headland, Alabama and which had been placed in evidence through Officer Forrester. The record in this respect reads as follows: (R. 19-20).
"Q. Tell us what he told you at that time?
 "A. At first he said he didn't know anything about it. Then, I mentioned about what Tim had stated to me that morning and then he kind of looked kind of surprised, you know. He didn't say too much. And then, he went and confessed he did take the pistol out of Tim's car.
"Q. What did he tell you?
 "A. The statement he wrote reads: (Reading from the statement.)
 "I took the gun out of Tim Tate's car on 10-21 of '84. Tim took me home, he in, I got out of the car. I took the gun.
 "Q. You said he told you these things. Did he write that statement himself? Is that in his own handwriting?
"A. Yes.
"Q. Did he admit to you that he had stolen it?
"A. Yes, sir."
As may be seen in reviewing this testimony, District Attorney Sorrell was referring to the appellant's written statement which had been placed in evidence at trial. *Page 1315 
The trial judge indicated that this was the basis of the district attorney's argument, so ruled, and overruled the motion for mistrial. Clearly, this ruling was in all respects proper as based upon the record in this cause. Shadle v. State,280 Ala. 379, 194 So.2d 538 (1967); Retowsky v. State,333 So.2d 193 (Ala.Crim.App. 1976) and authorities therein cited.
We have carefully examined this record and find same free of error. The judgment appealed from is due to be and the same is, hereby, affirmed.
AFFIRMED.
All the Judges concur.