JAMES H. FAULKNER,
Retired Justice.
Patrick Wayne Bunn was indicted for the offense of murder, in violation of § 13A-6-2, Code of Alabama 1975. The jury found Bunn guilty as charged in the indictment, and he was sentenced to life imprisonment without the possibility of parole. This court reversed Bunn’s murder conviction and remanded his case to the circuit court for a new trial. Bunn v. State, 581 So.2d 559 (Ala.Cr.App.1991). On June 10,1991, a new jury was struck, and a new trial was commenced against Bunn on the same charge of murder. The jury found Bunn guilty of the lesser included offense of manslaughter, and Bunn was sentenced to 25 years’ imprisonment in the State penitentiary. Two issues are raised on appeal.
*396 I
Bunn contends that the trial court committed reversible error in excluding hearsay evidence that would allegedly have explained his flight from the crime.
During the State’s case, the prosecution elicited testimony from several eyewitnesses that the victim, Jack “Knocker” McDaniel, was intoxicated on the night of the shooting and that McDaniel, who had been arguing with Bunn, struck Bunn, and that Bunn shot McDaniel. Eyewitness Wallace “Bucky” Wiggley testified that after the shooting occurred, Bunn, his girlfriend, Pamela Nelson, and Wiggley left the scene of the shooting and that Wiggley then drove Bunn and Nelson to Atlanta, Georgia.
The defense subsequently elicited testimony from Pamela Nelson that she, Bunn, and Wiggley drove to Atlanta after the shooting occurred and that from Atlanta, she and Bunn drove to Bay County, Florida, where they stayed for six or seven days. Nelson further testified that Bunn told her that he ran after the shooting because he was afraid of the victim’s family and friends.
During the defense’s direct examination of its last witness, Russell Edward Johnson, a roommate of Bunn, the following occurred:
“Q. After you learned that Knocker had been shot, did you have an occasion to see Patrick Wayne Bunn?
“A. No, sir, I did not, not until after I had got off work that morning.
“Q. Approximately what time was that?
“A. That was approximately 6:30, quarter to 7:00.
“Q. And when you saw him was he by himself, or was he with other people?
“A. He was with — Patrick was with Bucky and Pam.
“Q. Bucky and Pam?
“A. In Bucky’s car.
“Q. Had you seen — well, did you have an occasion to talk to Patrick at that point in time?
“A. Yes, sir, when we got back to the house.
“Q. And what was the subject matter of that conversation?
“A. That him and Knocker had got in a fight and that Knocker was — had knocked him down, and he accidentally shot him.
“Q. Was that the extent of the conversation?
“A. Basically right there at that time it was.
“Q. Did you have a conversation with him shortly thereafter?
“A. With Patrick?
“Q. Yes, sir.
“THE COURT: Isn’t this self-serving, to say the least?
“MR. KENDRICK [Defense counsel]: Judge—
“THE COURT: I realize she hasn’t objected, but it seems to me that it’s very self-serving.
“MR. KENDRICK: I understand that, Judge, but based on an interview I had with Mr. Johnson earlier, I think that there was a conversation that was relevant. And even though it might be self-serving, it certainly should come in because of the fact that Ms. Eades brought out something about flight, and it’s in response to the flight and why there might have been a flight. “THE COURT: Okay. If it has to do with the flight and justification for the flight, I will let it — and there was some type of flight done, I gather, from what you’re saying he says or going to say. I’ll let you ask him and see how far it goes.
“Q. Did you have a conversation with Swifty Morgan and some other people there that night before you talked to Pat?
“MS. EADES [Prosecutor]: And, Judge, I’d object to any—
“A. Yes, sir, I did.
“MS. EADES: — conversation they had.
“THE COURT: Yes. Conversation with Swifty Morgan and that kind of stuff is absolutely inadmissible.
“Q. Did you relay a message to Pat that night?
*397 “MS. EADES: Judge, I object to any kind of relay of message when we don’t even have conversation.
“THE COURT: From somebody else, sustained.
“MR. KENDRICK: Judge, may we approach the Bench?
“THE COURT: You may.
“(Bench conference, off the record.)
[[Image here]]
“(Whereupon, a bench conference was held out of the hearing of the jury as follows:)
“MR. KENDRICK: Basically I wanted to make an offer of proof for the record. We have a gentleman who—
“THE COURT: I can’t hear you.
“MR. KENDRICK: We have a gentleman who I understand—
“THE COURT: This witness right here?
“MR. KENDRICK: Yes, sir, the witness who is on the stand now. I understand from conversation with him earlier that he can testify that he told this defendant before he left town that this witness was aware that somebody had been killed and that he knew some of the people that—
“THE COURT: Now, wait. You told me that somebody had told this witness right here that there were people after this defendant?
“MR. KENDRICK: That’s correct.
“THE COURT: Well, I think that’s hearsay.
“MR. KENDRICK: Yes, sir, I understand that, but the State has put on evidence of flight, and I think—
“THE COURT: Sure, they have.
“MR. KENDRICK: I think we’ve got an absolute right to explain it, and if somebody made a threat on this man’s life, it’s evidence that should be taken into consideration.
“THE COURT: It’s hearsay. Some man tells this fellow that somebody is after this guy, and this guy calls and tells him. What this first guy puts in this witness’ head is nothing but hearsay. I’m letting it out.
“MR. KENDRICK: For the purposes of the record, we expect this witness to testify that he related that message to Patrick Wayne Bunn that his life had been threatened. Patrick Wayne Bunn left only after this threat had been related to him. And we think that explains the reason that he left town, and it should be let into evidence.
“(Whereupon, proceedings, continued in open court as follows:)
“(Jury present.)
“MR. KENDRICK: No further questions.
“THE COURT: Any questions, State?
“MS. EADES: No, sir, no questions at all.”
It is axiomatic that once the State introduces evidence of flight, the defendant may offer evidence which explains that his flight was for some reason other than to show a consciousness of guilt. Ex parte Lowe, 514 So.2d 1049 (Ala.1987). If, however, the proffered evidence is inadmissible for another reason, then the trial court is not in error for excluding the evidence. Peoples v. State, 256 Ala. 612, 56 So.2d 665 (1952).
“Of course it is competent to introduce evidence in explanation of flight, to show it may have been due to other motive than a sense of guilt of the crime charged, but such proof cannot be established by offending the hearsay rule doctrine.” Coleman v. State, 37 Ala.App. 406, 408, 69 So.2d 481, 483 (1954) (emphasis added).
Clearly, Johnson’s testimony as to what Swifty Morgan and others said after the shooting and Johnson’s testimony as to the contents of a message from a third party that Johnson was supposed to relay to Bunn after the shooting constituted hearsay, and the trial court properly excluded the testimony on that basis. We note that Bunn did explain his flight to the jury during the testimony of his girlfriend Pamela Nelson, who testified that she and Bunn drove to Atlanta and then to Florida because Bunn was afraid of the victim’s friends, family, and associates.
*398 II
Bunn contends that the following comment by the prosecutor during closing argument constituted a comment on his failure to testify and that the trial court erred in denying his motion for mistrial on that basis:
“MS. EADES: They left the scene. They didn’t stand there and tell the police what happened. They didn’t tell the police that night what happened. They didn’t tell the police the next day what happened.
“MR. KENDRICK: Your Honor, I’m going to—
“MS. EADES: Eight days later he was arrested.
“MR. KENDRICK: Your Honor, I’m going to object to this. I object to this. May we approach the Bench?
“THE COURT: You can approach the Bench, but I’m going to overrule you.
“MR. KENDRICK: I’d like to put an objection on the record, please.
“THE COURT: Put it on the record. “(Whereupon a bench conference was held out of the hearing of the jury as follows:)
“MR. KENDRICK: Your Honor, Ms. Eades just made the statement and referred to the defendant and the other persons that were out there that night, that they didn’t stay and didn’t tell the police anything. That’s a direct reference to the defendant failing to testify. We object to that, and we move for a mistrial.
“THE COURT: I overrule.”
To constitute an improper comment on a defendant’s failure to testify at trial, the prosecutor must make a direct reference to the accused’s failure to take the witness stand. Hardy v. State, 462 So.2d 1016 (Ala.Cr.App.1984).
In the instant case, there is absolutely nothing contained within the foregoing closing argument by the prosecutor that could be interpreted as a comment on Bunn’s failure to take the stand. The prosecutor’s comment was merely a reference to evidence that had already been presented at trial when the eyewitnesses testified to the flight of Bunn, Nelson, and Wiggley from the scene of the shooting. The prosecutor, moreover, used the pronoun “they” in the above-described comments, and from anything that appears in the record, the prosecutor could have been referring to Nelson and Wiggley’s failure to remain at the scene after the shooting and to tell the police what happened. The prosecutor’s comments, furthermore, were confined to the flight of Nelson, Wiggley, and Bunn before the defendant’s arrest, and thus these comments in no way refer to Bunn’s post-arrest silence.
Because the prosecutor, in closing argument, may properly make references to, or draw reasonable inferences from, evidence presented at trial, the trial court did not err in denying Bunn’s motion for mistrial on this ground. Smith v. State, 482 So.2d 1312 (Ala.Cr.App.1985), cert. denied, 482 So.2d 1312 (Ala.1986).
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur, except BOWEN, J., who dissents with an opinion in which TAYLOR, J., joins.