Donna Jo Jelks and Deshana Jelks were arrested for theft by deception ("ticket switching") at a Stein Mart, Inc., store, and these charges were ultimately dismissed. The Jelkses sued Stein Mart and William Caputo, a Stein Mart security guard, alleging malicious prosecution. The jury returned a verdict for the defendants and the court entered a judgment on that verdict; Donna Jelks appeals.[1] The defendants cross-appealed, arguing that the court should have entered a directed verdict in their favor.
We begin by noting these facts: On the day of their arrest in December 1988, Donna Jelks and her niece, Deshana, went to Stein Mart to shop. Donna Jelks, who is a police officer, parked her car in a fire lane and talked briefly to a uniformed Birmingham police officer who was patrolling the shopping mall; Donna was not on duty at *Page 178 
the time. After the two women entered the store and browsed for a short time, Caputo observed them in the back corner of the self-service shoe department. Deshana was seated on a bench, facing the wall. Caputo saw Deshana scrape a square of paper off the bottom of a boot, while Donna stood over her and watched. Caputo noticed that Donna would occasionally turn around and look toward the cashier. The boots were packaged in a large white box and were priced to sell for $89.95. Caputo observed Donna take the white box behind a rack of shoes and return with a smaller yellow shoe box marked with a price tag of $49.95. He then watched the two place the boots into the smaller yellow box, folding them over to fit into it. Caputo told the cashier that he suspected the two were switching the tickets on the boots and directed her to "ring up the sale" if they attempted to purchase the boots. They did bring the boots, to the cashier for purchase, and Caputo then detained them. The cashier went into the shoe area and found a price tag crumpled on the floor; the price exactly matched the price that was supposed to be on the boots. Caputo arrested Donna and Deshana on charges of theft by deception.
The district court initially dismissed these charges; however, the district attorney continued to investigate the case, and the two women were subsequently indicted by the grand jury. As a result, Donna Jelks was fired from her job with the Birmingham Police Department.
The case proceeded to trial in the circuit court and, at the close of the prosecution's evidence, the court entered a directed verdict in favor of the defendants. Donna Jelks then went before the personnel board of the Birmingham Police Department and was ultimately reinstated in her job. She thereafter filed a claim of malicious prosecution against Stein Mart and Caputo, seeking compensation for her temporary loss of employment and for emotional and mental distress she said was caused by the arrest. Her niece also sued in the same action.
On appeal, Jelks first argues that the defense attorney's use of peremptory strikes during jury selection was racially discriminatory and that she was therefore denied her right to a fair and impartial trial. Jelks bases her argument on the principles established in Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which apply to both civil and criminal cases in this state. Thomas v.Diversified Contractors, Inc., 551 So.2d 343 (Ala. 1989).
To challenge the use of peremptory strikes underBatson, the objecting party is required to establish a prima facie case of racial discrimination before the trial court, which would then consider all relevant circumstances that could lead to an inference of discrimination. Ex parteBranch, 526 So.2d 609 (Ala. 1987). After a prima facie case is established, it is presumed that the peremptory challenges were used to discriminate on the basis of race, and the burden shifts to the opposing party to offer race-neutral reasons for each of the jury strikes alleged to have been made on the basis of race. Branch. When the opposing party's explanations are contained in the record, we will review only the trial court's finding of discrimination vel non. Exparte Huntley, [Ms. 1910530, September 8, 1992], 1992 WL 228152 (Ala. 1992).
In this case, the jury venire was composed of 24 persons, 6 of whom were black. Each side had six peremptory strikes. Defense counsel initially struck five black persons from the jury, four of whom were unmarried black females. At that point, the plaintiffs' counsel objected on the basis ofBatson, and the trial court called upon defense counsel to state his reasons for the five strikes against black jurors. He stated that he struck the first black juror because she had read a newspaper article about the case and because she had said she sometimes had trouble finding price tags on merchandise when she shopped at Stein Mart; he said he struck the second black juror, a male, because he had previously served as a juror and had returned a "questionable" verdict in favor of the plaintiff in that instance; and he said he struck the third black juror primarily because she appeared tired and uninterested *Page 179 
and was the same age as Donna Jelks. The trial court found these reasons to be sufficiently race neutral.
Defense counsel stated that he struck the remaining two black women because they were about the same age as Donna Jelks, were unmarried, and were employed in professional occupations. The trial court pointed out that the jury contained another young unmarried professional female, a white doctor, and asked defense counsel to differentiate between this white professional individual and the two black professionals who were struck. The trial court also suggested that defense counsel replace the white female with one of the remaining black females. Defense counsel complied, and the case proceeded to trial with two black jurors empaneled.
It is within the sound discretion of the trial court to determine if peremptory challenges of black jurors were motivated by intentional racial discrimination. The court's findings in this regard are afforded great deference and will not be reversed on appeal absent clear error. Ex parteLynn, 543 So.2d 709 (Ala. 1988). After carefully reviewing the record, we conclude that the trial court did not err in determining that defense counsel's reasons for striking the first three black jurors were nondiscriminatory. The reasons for defense counsel's initial strike of the fourth juror are irrelevant, because she ultimately replaced the white juror. As to the remaining black juror who was struck, defense counsel gave explanations based on the juror's age and employment. We hold that these were legitimate nondiscriminatory reasons for the strike; thus, we find no violation of Batson in this case.
Jelks next argues that the trial court erred in allowing the defendants to present evidence concerning her employment history, including the fact that she had been fired from two previous jobs. She argues that the evidence was used merely as "character assassination" and was thus inadmissible.
The record shows that before trial Jelks's counsel had made a motion in limine to prohibit the defendants from submitting this evidence, arguing that it was prejudicial and irrelevant; the trial court denied the motion. At trial, defense counsel asked Jelks questions about her former employment, and her attorney objected. The trial court overruled the objection but instructed the jury that it could consider the evidence only as it related to the mental anguish that Jelks allegedly suffered when she was fired from the police force following her indictment for theft by deception. In instructing the jurors at the close of the trial, the trial court again charged them to consider Jelks's employment history only as it related to mental and emotional injury arising from her termination from the police force and not as an indication of her character.
It is always competent on cross-examination to ask questions that would tend to illustrate or impeach the accuracy of the witness's testimony. Davis v. Southland Corp.,465 So.2d 397 (Ala. 1985). Here, Jelks testified at length about the emotional and mental pain she claimed to have suffered when she was discharged from her job. Evidence of other discharges from previous jobs was thereafter admissible to indicate that she had been through the experience before and may have been somewhat hardened to it. In view of the trial court's limiting instruction, it did not err in admitting this evidence.
Because Jelks has shown no reversible error in her appeal, we pretermit any discussion of the cross-appeal.
The trial court's judgment is hereby affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and INGRAM, JJ., concur.
[1] Deshana Jelks is not a party to this appeal. *Page 180