[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 178 
The appellant, Christopher Eugene Brooks, was convicted of three counts of murder made capital because it occurred during the commission of a robbery, a burglary, and a rape. The appellant was sentenced to death. On appeal from that sentence, he raises five issues.
The evidence at trial showed that the appellant and the victim met while working as counselors at a camp in New York state. On December 31, 1992, the victim's body was found under the bed in the bedroom of her apartment in Birmingham, Alabama. She had been bludgeoned to death, and she was naked from the waist down.
On the night before the victim's body was found, a co-worker of the victim's saw the appellant enter the restaurant where they worked and saw the victim talking to the appellant. Later that night, the victim spoke with another friend by telephone; that friend heard a male voice in the background and the victim told her friend that a friend was sleeping on her living room floor.
A DNA analysis was performed on semen found in the victim's vagina. The results *Page 179 
were compared with the appellant's blood. There was testimony that the odds of finding another person with the same DNA as the appellant's and as found in the semen taken from the victim's body would be 1 in 69,349,000 among white persons and 1 in 310,100,000 among black persons.[1] A latent print of the appellant's palm was found on the victim's left ankle. A bloody fingerprint matching the appellant's was found on a doorknob in the victim's bedroom, as were two other matching latent fingerprints. The appellant's thumbprints were also found on a note in the victim's apartment.
The evidence further showed that the appellant was seen driving the victim's car on the night of December 31 and that he told a witness that he "had to fuck that girl to get that car." The car was found in Columbus, Georgia, where the appellant resided. Inside the car was a package of photographs with the name "Brooks, C." on the package. When the appellant was arrested, he had in his possession the victim's car keys and her Shell Oil Company credit card, which he had used on several occasions. He had also cashed the victim's paycheck and one of her personal checks. Several items were missing from the victim's apartment and the evidence showed that the appellant had pawned these items at various pawnshops in Columbus.
 I.
The appellant first contends that the prosecutor improperly remarked upon his decision to remain silent, in violation of his right under the Fifth Amendment to the United States Constitution. However, the remarks the appellant claims are objectionable were made during the prosecutor's rebuttal argument responding to defense counsel's closing arguments. The prosecutor stated:
 "Well, have you heard one word in this courtroom since Tuesday morning, one word in this courtroom since Tuesday morning, that causes you to believe there's a reasonable hypothesis of innocence, that is anything except compelling of his guilt, from this evidence proposed to you by [the defense attorney] in argument or otherwise?"
(R. 1006.) The appellant's attorney objected, stating that the prosecutor had improperly commented upon the appellant's exercise of his Fifth Amendment right to remain silent by using the phrase "or otherwise." On appeal, the appellant claims that the term was used intentionally to emphasize that the appellant had not testified. However, the prosecutor has the right to "reply in kind" to arguments made by the defense during its closing. Ex parte Musgrove, 638 So.2d 1360 (Ala. 1993), cert. denied, 513 U.S. 845, 115 S.Ct. 136, 130 L.Ed.2d 78 (1994);Davis v. State, 494 So.2d 851 (Ala.Crim.App. 1986). Alabama law is well settled that a challenged comment made by a prosecutor must be viewed not in light only of its context during closing arguments, but in light of all the evidence and the arguments heard during trial. Ex parte Musgrove, 638 So.2d at 1368.
In this case, the State's argument focused upon the evidence which was mentioned in the defense's closing but was never used, during the defense's case, to show that a reasonable hypothesis for the appellant's innocence existed. Defense counsel's closing argument focused in part upon the State's "failure" to prove that the defendant was the perpetrator of these crimes. The defense theory relied heavily on the idea that there was a reasonable hypothesis of the defendant's innocence and that the State had failed to dispel that hypothesis. Specifically, defense counsel mentioned several items of evidence found at the scene of the crime which placed other, unidentified persons at the crime scene. Those items were unidentified fingerprints, another male's pubic hair (a sample of which was taken from hair found on the victim's sweatpants), and unidentified semen found on a blanket in the victim's apartment. During rebuttal argument, the prosecutor specifically stated that the defense had never answered the question of whether a reasonable hypothesis for the appellant's innocence actually existed or, if it did, what it could be. That comment did not indicate that the appellant, by failing to testify, had not answered the question. Obviously, no defendant is expected to produce evidence of *Page 180 
his innocence. However, in a case such as this, in which the defense theory focuses on the State's failure to counter the defense based on a reasonable hypothesis of the defendant's innocence, it is entirely appropriate for the State to emphasize the appellant's failure to prove that defense.
Further, a prosecutor has the right to indicate to the jury those parts of the evidence or testimony presented by the State that the defense has failed to contradict; that process is not an infringement of the defendant's Fifth Amendment privilege against self-incrimination. Duncan v. Stynchcombe,704 F.2d 1213, 1215-16 (11th Cir. 1983); Ex parte McWilliams,640 So.2d 1015 (Ala. 1993); Griffin v. State, 393 So.2d 523, 528
(Ala.Crim.App. 1981). This court agrees with the trial court's finding that the comment at issue was directed toward the entirety of the defense's case, including all the evidence and testimony the defense presented to the jury. The State was simply indicating that the defense, although insisting that a scenario involving another perpetrator existed, never actually offered any evidence of such a scenario. Therefore, this court affirms the trial court's judgment regarding this matter.
 II.
The appellant contends that the trial court erred to reversal in denying the appellant's motion made pursuant to Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). At trial the appellant challenged the prosecutor's peremptory strikes of two black females on the basis of racial discrimination. On appeal, he also challenges the prosecutor's strikes based upon gender discrimination.
Upon the defense's motion, the trial court asked the State to offer race-neutral reasons for its peremptory strikes of the two black jurors. The State offered race-neutral reasons for both strikes (R. 231-33), stating that it struck two black female veniremembers because they were both unemployed, young, and single. The State also noted that it had struck a white male veniremember for the same reasons. The appellant argues that these reasons are not race-neutral, citing Ex parte Bird,594 So.2d 676 (Ala. 1991), and Carter v. State, 603 So.2d 1137
(Ala.Crim.App. 1992). However, Bird holds that employment status and age are improper considerations if they are the sole
basis for a strike; Carter holds the same regarding employment status. The prosecutor in this case offered other reasons for striking the veniremembers in question, e.g., their marital status (single), their lack of stability, and their lack of "life experience," all of which are valid considerations.
The United States Supreme Court, in Purkett v. Elem,514 U.S. 765, ___, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995), held that once the prosecutor offers a neutral reason for striking a juror, the trial court must decide whether the reason proffered is a mere pretext for purposeful discrimination. The Alabama Supreme Court has held that a circuit court's decision in this matter is entitled to great deference; thus our appellate courts will reverse the circuit court's judgment based on aBatson issue only where the trial court's decision is clearly erroneous. Ex parte Thomas, 659 So.2d 3, 7 (Ala. 1994). We find that the trial court's denial of the appellant's Batson motion was not clearly erroneous.
The appellant also argues on appeal that the prosecutor engaged in gender discrimination in his strikes, citingJ.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89
(1994), which extended Batson to include gender discrimination. Because this issue is raised for the first time on appeal, it is reviewable only under the plain error rule. Ala. R.App. P. 45A. A failure to object weighs heavily against a finding of prejudice. Williams v. State, 601 So.2d 1062
(Ala.Crim.App. 1991). The appellant fails to state how the prosecutor engaged in gender-based discrimination, thus his allegation is a baseless, bare assertion. This court sees no evidence of gender-based discrimination in the record; thus there is no plain error.
Finally, the appellant argues that the prosecutor discriminated against veniremembers based upon their employment status. The appellant attempts to extrapolate from the reasoning used by courts to condemn gender discrimination to argue that *Page 181 
discrimination based upon the fact that one is unemployed is likewise condemned. However, unemployment is not among those classifications subject to protection under Batson and its progeny. Employment status is not a suspect classification in the same manner as gender or race and it is not entitled to the same protection. Therefore, this argument lacks merit.
 III.
The appellant contends that his trial counsel was ineffective for failing to present more mitigating evidence at the sentencing phase of the trial. The only evidence presented in mitigation by the defense during the sentencing phase was the testimony of the appellant's mother.
This issue was raised by appellate counsel in a motion for a new trial. The trial court held a hearing on this matter, and the appellant and both of his trial attorneys testified. After listening to all the evidence, the trial court found that trial counsel had "ably and with distinction zealously represented" the appellant during his trial.
On appeal, the appellant contends that his trial counsel did not spend enough time with him to explore mitigation evidence, that his trial counsel should have hired an investigator to evaluate his "social history," and that his trial counsel failed to call any character witnesses on his behalf. He also alleges that his counsel did not tell him that he could testify at the sentencing hearing.
Trial counsel both testified at the hearing that they talked and met with the appellant on several occasions before trial and that they talked with him frequently during the course of the trial. They stated that they inquired into the appellant's background and his family and that they asked for information that might be helpful. They stated that the appellant did not have any suggestions. After trial counsel received the results of the appellant's psychiatric evaluation, they found no evidence of any mental or emotional problems. They were not made aware of any substance abuse problems or of any evidence that the appellant had had an abusive or dysfunctional childhood.
Trial counsel stated that although the appellant gave them the names of several possible character witnesses, they decided against calling them, because if they thought if they did so the prosecution would put on numerous victim impact witnesses and they obviously believed that the victim impact evidence would hurt the appellant more than the character witnesses' testimonies would help. Trial counsel also testified that they fully informed the appellant of his right to testify and that they discussed with him the pros and cons of doing so. According to counsel, the appellant made the decision not to testify but defense counsel agreed with this strategy, particularly because the appellant had a prior conviction.
" 'To prevail on a claim of ineffectiveness of counsel, the petitioner must show (1) that his counsel's performance was deficient and (2) that he was prejudiced by his counsel's performance. Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).' " Worthington v. State,652 So.2d 790, 796 (Ala.Crim.App. 1994), quoting Cartwright v. State,645 So.2d 326, 329 (Ala.Cr.App. 1994). Here, the appellant has not established either prong of Strickland.
The appellant presented no evidence at the hearing of any mitigating evidence. We cannot find that counsel's performance was deficient when there is no indication in the record that any evidence of mitigation exists. Baldwin v. State,539 So.2d 1103 (Ala.Crim.App. 1988), cert. denied, 493 U.S. 874,110 S.Ct. 206, 107 L.Ed.2d 159 (1989). While it could be argued that trial counsel failed to explore the character witnesses that the appellant had offered, the appellant did not inform the trial court at the hearing on his motion for new trial of who these witnesses were and what they would testify to. Further, trial counsel's decision not to put on any character evidence was a strategic decision and one that was probably wise in this case — in light of the fact that there was evidence at the hearing that the state would have produced a lot of victim impact evidence had the appellant presented his character witnesses. Ashley v. State, 606 So.2d 187
(Ala.Crim.App. 1992); Marshall v. State, *Page 182 629 So.2d 766 (Ala.Crim.App. 1993) Fortenberry v. State,659 So.2d 194 (Ala.Crim.App. 1994), cert. denied, ___ U.S. ___,116 S.Ct. 137, 133 L.Ed.2d 84 (1995).
Further, we cannot say that the appellant suffered any prejudice based on counsel's performance because he failed to demonstrate any evidence of mitigation. Prejudice cannot merely be alleged; it must be affirmatively proved. Duren v. State,590 So.2d 360 (Ala.Crim.App. 1990). Thus, the appellant has not shown that there is a reasonable probability that the outcome of his trial would have been different, but for trial counsel's performance. Baldwin, Thompson v. State,581 So.2d 1216 (Ala.Crim.App. 1991), cert. denied, 502 U.S. 1030,112 S.Ct. 868, 116 L.Ed.2d 774 (1992). This issue is without merit.
 IV.
The appellant further claims that the trial court erred to reversal in using the term "abiding conviction" during its instruction to the jury defining reasonable doubt. This issue lacks merit.
The appellant equates the court's use of the term "abiding conviction" with the improper use of the terms "substantial" and "grave" in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328,112 L.Ed.2d 339 (1990). In Cage, the United States Supreme Court reversed the appellant's conviction because the trial court used the terms "substantial" and "grave" to define reasonable doubt. Because the appellant in this case failed to object to the trial court's use of the term "abiding conviction" at the appropriate time, this issue is subject to plain error review. Ala.R.App.P. 45A. This failure to object weighs heavily against the appellant's claim of prejudice.Williams v. State, 601 So.2d 1062 (Ala.Crim.App. 1991). Further, this court must review the trial court's instruction to the jury in its entirety, and not analyze only one phrase.Adams v. State, 587 So.2d 1265 (Ala.Crim.App. 1991)
This court has held many times that the use of the term "abiding conviction," as it was used here, is not erroneous.See, Alexander v. State, 601 So.2d 1130 (Ala.Crim.App. 1992). In Alexander, as here, the trial court instructed the jury that if it harbored an "abiding conviction" of the defendant's guilt, after a full and fair consideration of all the evidence presented, then it would be convinced by the full measure of proof necessary to convict the defendant. 601 So.2d at 1133. InBaker v. State, 477 So.2d 496 (Ala.Crim.App. 1985), cert. denied, 475 U.S. 1029, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986), this court quoted with approval the following language fromOwens v. State, 52 Ala. 400, 404-05 (1875): "[Reasonable doubt] is the doubt the evidence generates; when the jury carefully weighing all the evidence cannot say they feel an abiding conviction of the defendant's guilt. This is the most frequent definition of a reasonable doubt, and is perhaps as accurate as any which could be given."
The trial court in this case used the term "abiding conviction" to instruct the jury as to how it should feel about the appellant's guilt. In Cage, which the appellant attempts to analogize to this case, the United States Supreme Court reversed the conviction based on the trial court's use of the terms "substantial" and "grave" to define the character of thedoubt the jury should have in order to acquit the defendant. That argument is inapplicable here because this trial court did not do what was found objectionable and reversible in Cage — it did not increase the level of doubt necessary to convict, thereby decreasing the prosecution's burden of proof. The trial court in this case properly instructed the jury to consider all of the evidence presented, and it correctly defined the "beyond a reasonable doubt" standard to the jury during its charge. Therefore, we cannot say that the use of the term "abiding conviction" allowed the jury to find this appellant guilty based on a lower standard than beyond a reasonable doubt.
 V.
Finally, the appellant asserts that the trial court improperly admitted the State's genetic deoxyribonucleic acid ("DNA") evidence. He argues that the data received from the two companies hired by the State to analyze the DNA evidence in this case, Lifecodes and Collaborative Testing Research Associates, *Page 183 
may be tainted because, he says, the results are always perfect and because the State pays those companies for positive results and they would lose that income if their test results did not achieve positive results every time. Further, the appellant casts doubt upon the database used in the testing because, he says, 120 samples seems like too low a figure to support a population study.
Those allegations have nothing to do with satisfying the three prongs of the test for admissibility of DNA matching and population frequency statistics evidence promulgated in Exparte Perry, 586 So.2d 242 (Ala. 1991). The appellant's allegations question the weight and not the sufficiency of the evidence. Notably, the appellant failed to object to the introduction of this evidence at trial; therefore, it is subject to plain error review.
This court sees nothing in the record to indicate that the State's DNA expert witness, Faron Brewer, failed to address the three prongs of the Perry test. That test is as follows:
 "I. Is there a theory, generally accepted in the scientific community, that supports the conclusion that DNA forensic testing can produce reliable results?
 "II. Are there current techniques that are capable of producing reliable results in DNA identification and that are generally accepted in the scientific community?
 "III . . . .did the testing laboratory perform general accepted scientific techniques without error in the performance or interpretation of the tests?"
586 So.2d at 250.
Mr. Brewer, a forensic serologist who works in the area of DNA testing for the Alabama State Department of Forensic Sciences, discussed the scientific community's general acceptance of DNA testing, the reliability of DNA test results, and the reliability of the procedures used in this particular case during his testimony before the jury. We have reviewed the testimony admitted by the trial court regarding the DNA evidence, and we find that the expert witness, Mr. Brewer, did an excellent job of satisfying the Perry test. Further, the appellant does not support his allegations regarding the allegedly tainted results by the testing companies nor his criticism of the size of the population database used in this analysis with any evidence or legal argument. Therefore, this issue is without any merit.
 VI.
This Court is required by § 13A-5-53, Code of Alabama 1975, to review the propriety of the appellant's sentence of death and to examine the record in this case for plain error. Rule 45A, A.R.Crim.P.
We have reviewed the trial court's findings concerning the aggravating and mitigating circumstances in this case. The trial court found the following aggravating circumstances: that the capital offenses occurred while the appellant was engaged in the commission of a robbery, a rape, and a burglary and that the capital offense was especially heinous, atrocious, or cruel when compared to other capital offenses. As for mitigating circumstances, the trial court considered the fact that the appellant did not have a significant history of prior criminal activity and that the defendant was 20 years old at the time of the crime. Our review of the record leads us to conclude that the trial court's findings are supported by the record. We find no evidence that the appellant's sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. Our independent weighing of the aggravating and mitigating circumstances convinces us that death is the appropriate and proper sentence in this case.
Furthermore, the appellant's sentence of death is not disproportionate to the penalty imposed in similar cases, considering the crime and this appellant. For cases involving murder during a burglary, see Thomas v. State, 539 So.2d 375
(Ala.Crim.App.), aff'd, 539 So.2d 399 (Ala. 1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 709 (1989);Lynn v. State, 543 So.2d 704 (Ala.Crim.App. 1987), aff'd,543 So.2d 709 (Ala. 1988), cert. denied, 493 U.S. 945,110 S.Ct. 351, 107 L.Ed.2d 338 (1989); Ford v. State, 515 So.2d 34
(Ala.Crim.App. 1986), aff'd 515 So.2d 48 (Ala. 1987), cert. denied, *Page 184 
484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988). For cases involving murder during a rape, see Freeman v. State,555 So.2d 196 (Ala.Crim.App. 1988), aff'd 555 So.2d 215, (Ala. 1989), cert. denied 496 U.S. 912, 110 S.Ct. 2604, 110 L.Ed.2d 284
(1990); Bradley v. State, 494 So.2d 750 (Ala.Crim.App. 1985),aff'd, 494 So.2d 772 (Ala. 1986), cert. denied, 480 U.S. 923,107 S.Ct. 1385, 94 L.Ed.2d 699 (1987); Dunkins v. State,437 So.2d 1349 (Ala.Crim.App.), aff'd, 437 So.2d 1356 (Ala. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329,79 L.Ed.2d 724 (1984). For murder cases during a robbery, see Baldwin v.State, 456 So.2d 117 (Ala.Crim.App. 1983), aff'd,456 So.2d 129 (Ala. 1984), 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300
(1985); Bell v. State, 475 So.2d 601 (Ala.Crim.App. 1984),affirmed, 475 So.2d 609 (Ala. 1985), cert. denied,474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985); Bracewell v. State,475 So.2d 616 (Ala.Crim.App. 1984).
Pursuant to Rule 45A, Ala.R.App.P., we have thoroughly reviewed the record in this case, and we find no error that adversely affected this appellant's rights during the guilt or sentencing phase of this trial. The appellant's convictions for these capital offenses and his sentence of death are proper. The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur except LONG, J., who recuses.
[1] The appellant is a white male.