[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 186 
Christopher Eugene Brooks was convicted of a murder made capital because the murder occurred during a rape, a robbery, and a burglary. Ala. Code 1975, § 13A-5-40(a). The trial judge accepted the jury's recommendation and sentenced the defendant to death. The Court of Criminal Appeals affirmed his conviction and sentence. Brooks v. State, 695 So.2d 176
(Ala.Crim.App. 1996). This Court granted certiorari review. On this review, Brooks raises five issues. We affirm.
The facts of the case were stated in the opinion of the Court of Criminal Appeals:
 "[Brooks] and the victim met while working as counselors at a camp in New York state. On December 31, 1992, the victim's body was found under the bed in the bedroom of her apartment in Birmingham, Alabama. She had been bludgeoned to death, and she was naked from the waist down.
 "On the night before the victim's body was found, a co-worker of the victim's saw [Brooks] enter the restaurant where [the victim] worked and saw the victim talking to [Brooks]. Later that night, the victim spoke with another friend by telephone; that friend heard a male voice in the background and the victim told her friend that a friend was sleeping on her living room floor.
 "A DNA analysis was performed on semen found in the victim's vagina. The results were compared with [Brooks's] blood. There was testimony that the odds of finding another person with the same DNA as [Brooks] and as found in the *Page 187 
semen taken from the victim's body would be 1 in 69,349,000 among white persons and 1 in 310,100,000 among black persons. [Brooks is white.] A latent print of [Brooks's] palm was found on the victim's left ankle. A bloody fingerprint matching [Brooks's fingerprint] was found on a doorknob in the victim's bedroom, as were two other matching latent fingerprints. . . .
 "The evidence further showed that [Brooks] was seen driving the victim's car on the night of December 31 and that he told a witness that he 'had to fuck that girl to get that car.' The car was found in Columbus, Georgia, where [Brooks] resided. Inside the car was a package of photographs with the name 'Brooks, C.' on the package. When [Brooks] was arrested, he had in his possession the victim's car keys and her Shell Oil Company credit card, which he had used on several occasions. He had also cashed the victim's paycheck and one of her personal checks. Several items were missing from the victim's apartment and the evidence showed that [Brooks] had pawned these items at various pawnshops in Columbus."
Brooks v. State, 695 So.2d at 178-79. The record also reflects that after searching Brooks's apartment, the police recovered the keys to the victim's automobile; pawn tickets; the victim's AT T answering machine; and receipts from purchases that had been made with the victim's Shell Oil Company credit card.
The first issue is whether the prosecutor, in violation of the defendant's constitutional right to remain silent, improperly remarked upon the defendant's failure to testify. The following exchange occurred during the rebuttal portion of the prosecutor's closing argument:
 "MR. BROWN: In that connection I ask Mr. Boudreaux [defendant's counsel], the last thing I said before I sat down was to get up here and tell these people what's the reasonable hypothesis that's consistent with his innocence? That says anything other than he intentionally killed her while he raped and robbed her in her apartment. Have you heard it yet? Of course not.
 "MR. BOUDREAUX: Your Honor, I am going to object. I don't like to object during Mr. Brown's closing, but as the Court has already instructed the jury, there's absolutely no burden on myself in the case whatsoever. And I ask that he be admonished and the jury curatively charged.
 "THE COURT: Well, of course, there's no burden of proof on Mr. Brooks, as you well know. Sometimes there are spirited remarks by the lawyers and there's nothing wrong with zeal and enthusiasm. As you well know, statements of counsel is [sic] not evidence. Shall we proceed?
 "MR. BROWN: Well, have you heard one word in this courtroom since Tuesday morning, one word in this courtroom since Tuesday morning, that causes you to believe there's a reasonable hypothesis of innocence, that is anything except compelling of his guilt from this evidence proposed to you by Mr. Boudreaux in argument or otherwise?"
Following this statement, defense counsel again objected and asked to be heard in chambers at the conclusion of the trial court's charge to the jury. In chambers, defense counsel moved for a mistrial, arguing that the prosecutor had improperly commented upon the defendant's failure to testify. The trial court denied the motion, finding that the comment had been directed toward defense counsel's argument that there existed a reasonable hypothesis of the defendant's innocence; the court stated:
 "I did not regard it as [a comment on the defendant's silence] in any way, shape or form. We knew the circumstantial evidence charge was coming, you made much of it, as you should have, and I think he just responded, that's how I saw it. . . . You asked me to admonish him. I did not admonish him because I didn't think it was required."
The Court of Criminal Appeals, affirming the conviction, held that the comment had not been directed toward the defendant's silence, but that the comment was a "reply in kind" to defense counsel's argument that the circumstantial nature of the State's evidence created a reasonable hypothesis suggesting *Page 188 
the defendant's innocence, and that the State had not disproved that hypothesis. We agree.
In all criminal prosecutions, the accused shall not be compelled to give evidence against himself. Alabama Constitution, Art. I, § 6.
 "On the trial of all indictments, complaints or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness, and his failure to make such a request shall not create any presumption against him nor be the subject of comment by counsel. If the district attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within 30 days from entry of the judgment."
Ala. Code 1975, § 12-21-220; see also Ex parte Wilson,571 So.2d 1251, 1261 (Ala. 1990); Ex parte Yarber, 375 So.2d 1231, 1233
(Ala. 1979); Whitt v. State, 370 So.2d 736, 738-39 (Ala. 1979).
Comments by a prosecutor on a defendant's failure to testify are highly prejudicial and harmful, and courts must carefully guard against a violation of a defendant's constitutional right not to testify. Whitt, supra, at 739; Ex parte Williams,461 So.2d 852, 853 (Ala. 1984); see Ex parte Purser, 607 So.2d 301
(Ala. 1992). This Court has held that comments by a prosecutor that a jury may possibly take as a reference to the defendant's failure to testify violate Art. I, § 6, of the Alabama Constitution of 1901. Ex parte Land, 678 So.2d 224 (Ala.), cert. denied, ___ U.S. ___, 117 S.Ct. 308, 136 L.Ed.2d 224
(1996); Ex parte McWilliams, 640 So.2d 1015 (Ala. 1993); Exparte Wilson, supra; Ex parte Tucker, 454 So.2d 552
(Ala. 1984); Beecher v. State, 294 Ala. 674, 320 So.2d 727
(1975). Additionally, the Fifth and Fourteenth Amendments of the United States Constitution may be violated if the prosecutor comments upon the accused's silence. Griffin v.California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965);Ex parte Land, supra; Ex parte Wilson, supra. Under federal law, a comment is improper if it was " ' "manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." ' " United States v. Herring,955 F.2d 703, 709 (11th Cir.), cert. denied, 506 U.S. 927,113 S.Ct. 353, 121 L.Ed.2d 267 (1992) (citations omitted); Marsden v.Moore, 847 F.2d 1536, 1547 (11th Cir.), cert. denied,488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); United States v.Betancourt, 734 F.2d 750, 758 (11th Cir.), cert. denied,469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 365 (1984). The federal courts characterize comments as either direct or indirect, and, in either case, hold that an improper comment may not always mandate reversal.[1]
Consistent with this reasoning, Alabama law distinguishes direct comments from indirect comments and establishes that *Page 189 
a direct comment on the defendant's failure to testify mandates the reversal of the defendant's conviction, if the trial court failed to promptly cure that comment. Whitt v. State, supra; Exparte Yarber, supra; Ex parte Williams, supra; Ex parte Wilson, supra. On the other hand, "covert," or indirect, comments are construed against the defendant, based upon the literal construction of Ala. Code 1975, § 12-21-220, which created the "virtual identification doctrine." Ex parte Yarber, 375 So.2d at 1234. Thus, in a case in which there has been only an indirect reference to a defendant's failure to testify, in order for the comment to constitute reversible error, there must have been a virtual identification of the defendant as the person who did not become a witness. Ex parte Yarber, 375 So.2d at 1234; Ex parte Williams, supra; Ex parte Wilson, supra; Exparte Purser, supra. A virtual identification will not exist where the prosecutor's comments were directed toward the fact that the State's evidence was uncontradicted, or had not been denied. See Beecher v. State, 294 Ala. 674, 682, 320 So.2d 727,734 (1975); Ex parte Williams, supra; Ex partePurser, supra. Yet, in such circumstances, it becomes important to know whether the defendant alone could have provided the missing evidence.[2]
A challenged comment of a prosecutor made during closing arguments must be viewed in the context of the evidence presented in the case and the entire closing arguments made to the jury — both defense counsel's and the prosecutor's. Exparte Land, supra; Windsor v. State, 683 So.2d 1021, 1023
(Ala. 1994); Ex parte Musgrove, 638 So.2d 1360, 1368 (Ala. 1993), cert. denied, 513 U.S. 845, 115 S.Ct. 136, 130 L.Ed.2d 78
(1994). Here, defense counsel argued that the State's evidence, because of its circumstantial nature, was insufficient to prove beyond a reasonable doubt that the defendant had committed the crimes. Defense counsel insisted that the evidence created a reasonable hypothesis of the defendant's innocence because there were unidentified fingerprints, unidentified pubic hair, and unidentified semen at the crime scene, which, defense counsel contended, suggested that another person had committed the crimes. In rebuttal, the State commented upon the fact that defense counsel had not presented any evidence in support of this contention and had failed to contradict the State's evidence. The prosecutor highlighted the overwhelming evidence implicating the defendant as the perpetrator of the crimes and, in this context, argued that defense counsel's contention was hollow.
Under the particular facts of this case, we cannot find that the prosecutor's statements were directed toward the defendant's silence. When viewed in the proper context, it is clear that they were a response to defense counsel's characterizing the circumstantial nature of the State's evidence in a way that created a reasonable hypothesis of innocence. Ex parte Musgrove, 638 So.2d 1360 (Ala. 1993); seeStephens v. State, 580 So.2d 11 (Ala.Crim.App. 1990), aff'd,580 So.2d 26 (Ala.), cert. denied, 502 U.S. 859, 112 S.Ct. 176,116 L.Ed.2d 138 (1991); Merritt v. State, 571 So.2d 409
(Ala.Crim.App. 1990); Ex parte McWilliams, 640 So.2d 1015, 1019-20
(Ala. 1993); Ex parte Wilson, 571 So.2d at 1262. The Court of Criminal Appeals correctly approved the trial court's ruling that the prosecutor had appropriately exercised his right to "reply in kind." Ex parte Musgrove, 638 So.2d at 1369. We conclude that, in the context of the evidence and the closing arguments of both the defense and the State, the statements at issue were not a reference to the defendant's failure to testify, but rather were a reply to the insufficiency argument made by defense counsel that the evidence suggested a reasonable hypothesis of the defendant's innocence and that the State had failed to eliminate that hypothesis. Accordingly, we find no reversible *Page 190 
error. Assuming, however, that the statements constituted an indirect reference, we conclude that the trial court's ameliorative charge to the jury and the overwhelming evidence of guilt rendered that error harmless beyond a reasonable doubt. United States v. LeQuire, supra; United States v.Delgado, supra.
The defendant next contends that the prosecutor struck jurors on the basis of race and thereby violated the principles ofBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986). The prosecutor used two peremptory strikes to remove black female jurors from the jury venire. Defense counsel objected, alleging that the strikes had been motivated by "strictly racial reasons." The trial court asked the prosecutor for race-neutral reasons for the strikes; the prosecutor replied that the jurors had never been employed; that they were single; that they were young; and that he considered them less stable and not well equipped in terms of life experience to handle the nature of a capital case and the prosecutor's seeking the death penalty. The prosecutor also indicated that he had struck one white male for the same reasons.
The party alleging discriminatory use of a peremptory strike bears the burden of establishing a prima facie case of discrimination. Ex parte Branch, 526 So.2d 609, 622 (Ala. 1987). Where, as in this case, the trial court requires the opposing counsel to state race-neutral reasons for peremptory strikes, without first requiring that a prima facie case of discrimination be shown, this Court will review the reasons given and the trial court's ultimate decision on the Batson
motion without any determination of whether the moving party met its burden of proving a prima facie case of discrimination.Norfolk Southern Ry. v. Gideon, 676 So.2d 310 (Ala. 1996), citing Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859,114 L.Ed.2d 395 (1991). When the trial court has required a party to state reasons for the strikes, that party must articulate reasons that are clear, specific, and legitimate, that relate to the particular case, and that are nondiscriminatory. Exparte Bird, 594 So.2d 676, 679 (Ala. 1991); Carter v. State,603 So.2d 1137 (Ala.Crim.App. 1992); Adkins v. State,639 So.2d 515 (Ala.Crim.App. 1993), aff'd, 639 So.2d 522 (Ala.), cert. denied, 513 U.S. 851, 115 S.Ct. 151, 130 L.Ed.2d 90 (1994). After race-neutral reasons have been articulated, the moving party can offer evidence showing that those reasons are really a sham or pretext. Ex parte Branch, 526 So.2d at 625. On appeal, the trial court's ruling on the question whether the responding party offered legitimate race-neutral reasons will not be overturned unless it is clearly erroneous. K.S. v. Carr,618 So.2d 707, 710 (Ala. 1993), citing Ex parte Branch, 526 So.2d at 622.
The defendant contends that the reasons offered by the prosecutor were not sufficiently race-neutral, relying onEx parte Bird, supra, Carter v. State, supra, and Adkins v.State, supra. Essentially, Ex parte Bird, Carter, and Adkins
respectively hold that age, employment status, and marital status are not sufficiently race-neutral reasons for a peremptory strike, if the prosecutor gives that reason as the sole basis for the strike, where that reason is unrelated to the case. The Court of Criminal Appeals, in approving the trial court's denial of the defendant's motion, found that the prosecutor had relied upon instability and lack of life experience, in addition to the three factors of age, employment status, and marital status. Thus, the court found that the prosecutor had not relied solely on those three factors. The defendant argues that the factors of instability and lack of life experience do not add anything to the other three factors; i.e., that to speak of instability and lack of life experience is another way to speak of age, employment status, and marital status. We find, however, that the stated reasons, taken together, were permissible justifications for strikes used to remove jurors who might have identified with and felt sympathy for the defendant, who was also young, single, unemployed, and ostensibly unstable, and to remove jurors without "life experience," in favor of more experienced jurors, considering the burden posed by a capital murder trial. Olsen v. Rich,657 So.2d 875 (Ala. 1995); Jelks v. Caputo, 607 So.2d 177
(Ala. 1992); see Fisher v. State, 587 So.2d 1027
(Ala.Crim.App.), cert. denied, 587 So.2d 1039 (Ala. 1991), *Page 191 
cert. denied, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628
(1992).
Furthermore, the prosecutor's comparable treatment of the jurors of both races is evidence tending to rebut any inference of discriminatory intent. See Ex parte Branch, 526 So.2d 609,624 (Ala. 1987). Here, the prosecutor struck two black females and one white male on the basis of age, employment status, marital status, instability, and lack of life experience. This comparable treatment among jurors of both races suggests that the strikes were race-neutral. Ex parte Branch, supra; Sandersv. State, 623 So.2d 428 (Ala.Crim.App. 1993). Accordingly, we conclude that the trial court was not clearly erroneous in determining that the jurors were struck for race-neutral reasons. Ex parte Thomas, 659 So.2d 3, 7 (Ala. 1994); K.S.v.Carr, 618 So.2d 707 (Ala. 1993).
The defendant also argues that the prosecutor struck jurors on the basis of "economic status," in violation of § 12-16-56, Ala. Code 1975, which states that economic status shall not serve as a basis for exclusion from jury service. The defendant did not raise this issue with the trial court. We conclude that it lacks merit, because the record does not indicate that the prosecutor used economic status as a basis for any of his peremptory strikes.
The defendant next contends that he was denied effective assistance of trial counsel. This issue was raised in a motion for new trial, and the trial court held a hearing on the matter. After listening to the allegations and hearing the testimony of the trial attorneys, the court found that counsel had "ably and with distinction zealously represented" the defendant during the trial. The Court of Criminal Appeals agreed, holding, 695 So.2d at 181, that the defendant had failed to satisfy either prong of the test enunciated by the United States Supreme Court in Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which puts the burden on the defendant to show that trial counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687,104 S.Ct. at 2064, 80 L.Ed.2d at 694-95.
In support of his argument, the defendant argues that his trial counsel failed to properly investigate the case in preparation for trial. The defendant argues that trial counsel should have investigated the background of the defendant and the circumstances of the crime; that counsel should have hired a private investigator and DNA experts to contest the State's evidence; and that counsel should have contacted character witnesses and witnesses named in the police report, but did not. At the hearing, trial counsel testified that his trial preparation was adequate. Counsel had complete access to the prosecutor's files; counsel interviewed all essential witnesses; counsel, as a matter of trial strategy, agreed with the prosecutor that during the sentencing phase of the trial he would not present testimony that the defendant was of a good character, in exchange for the prosecutor's agreement not to present victim-impact evidence; and counsel chose not to use DNA experts to contest the semen sample, because the defendant had admitted to having had intercourse with the victim on the night of the murder, and, instead, argued that no rape had occurred. Counsel testified that the psychiatric evaluation of the defendant showed no evidence of emotional, mental, or substance abuse problems; and that the "phantom defendant" defense was not a viable alternative, given that the defendant's bloody fingerprints were found in the victim's apartment.
In Ex parte Lawley, 512 So.2d 1370, 1372-73 (Ala. 1987), we stated that "strategic decisions made after less than complete investigation [of the crime] are 'reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' " (Citations omitted.) Having reviewed counsel's performance with a strong presumption of reasonable professional assistance, Strickland,466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 694, we conclude that counsel's investigation of the case was reasonable and that the particular way he exercised his judgment did not suggest ineffective assistance of counsel.
The defendant also argues that counsel failed to properly communicate with him and failed to advise him of his options *Page 192 
with respect to testifying or not testifying. The defendant alleges that counsel did not return the defendant's telephone calls and generally failed to keep the defendant informed. Counsel, however, testified that he adequately discussed with the defendant all aspects of the case; that counsel visited the defendant at the jail where the defendant was incarcerated and had several telephone conversations with him; that the defendant indicated as early as the preliminary hearing that he did not want to testify; and that the defendant understood his alternatives and ultimately chose not to testify. Based upon the presumption of reasonableness we accord counsel's actions, we do not find this assistance to have been deficient.
The defendant also contends that trial counsel's assistance was made ineffective by the fact that counsel presented no meaningful mitigating evidence in the sentencing phase of the trial. The record, however, shows that counsel investigated all potential mitigating evidence, but that no such evidence was usable. As stated by the Court of Criminal Appeals, "there is no indication in the record that any evidence of mitigation exists." 695 So.2d at 181. We agree with the Court of Criminal Appeals that counsel's performance cannot be deemed deficient in this respect, when there is no such evidence. Baldwin v.State, 539 So.2d 1103 (Ala.Crim.App. 1988), cert. denied,493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989). Accordingly, the defendant's arguments of ineffective assistance of counsel fail to satisfy the test of Strickland, supra.
The defendant next argues that during its charge to the jury the trial court committed reversible error by using the phrase "abiding conviction" in reference to "reasonable doubt." The trial court stated:
 "If after a full and fair consideration of all the evidence in the case, if there should remain in your minds an abiding conviction that [the defendant] is guilty of a charged offense, then you would be convinced by that full measure of proof the law requires, you would be convinced beyond a reasonable doubt and you should convict."
The defendant reads this instruction to mean that the jurors needed an abiding conviction in order to find a reasonable doubt, which, he says, would have improperly reduced the State's burden of proof. The defendant contends that this instruction could have caused a reasonable juror to believe that the degree of proof necessary to convict was lower than that which is required by the Due Process Clause of the United States Constitution, citing Cage v. Louisiana, 498 U.S. 39,111 S.Ct. 328, 112 L.Ed.2d 339 (1990), in support of that contention. Defense counsel did not object to the instruction. Therefore, our review of this issue is subject to the plain error rule. See Rule 39(k) and Rule 45A, Ala.R.App.P.
In Cage, supra, the Supreme Court held that raising the degree of doubt that would require an acquittal impermissibly reduces the State's burden of proving guilt. Here, however, the complained-of charge relates to the degree of evidence necessary for a conviction. After giving the charge quoted before the preceding paragraph, the trial court continued:
 "On the other hand, if after the same full and fair consideration of all of the evidence in this case, if there does not remain in your collective minds here an abiding conviction that he is guilty, then you would not be convinced by that full measure of proof required in the law and he should be acquitted."
These instructions clearly do not contain the same flaws condemned by the Supreme Court in Cage. Furthermore, in Victorv. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583
(1994), the United States Supreme Court held that an instruction cast in terms of an abiding conviction as to guilt correctly states the prosecutor's burden of proof. Thus, we find no error in the trial court's charge. See Alexander v.State, 601 So.2d 1130 (Ala.Crim.App. 1992).
The defendant's final argument is that the trial court erred by allowing testimony concerning the results of DNA testing into evidence, because, he says, the State had failed to establish that the DNA laboratory in Mobile, where the testing was done, used generally accepted testing techniques and had performed its tests without error, as *Page 193 
required by the third prong of the test stated in Ex partePerry, 586 So.2d 242 (Ala. 1991). That prong asks:
 "III. In this particular case, did the testing laboratory perform generally accepted scientific techniques without error in the performance or interpretation of the tests?"
Ex parte Perry, 586 So.2d at 250.
At the Frye hearing, Faron Brewer, a forensic serologist working with the State Department of Forensic Sciences, amply testified to the general acceptance of the RFLP method used by the Mobile DNA laboratory. He testified that it complied with the guidelines established by the Technical Working Group for DNA Analysis Method,[3] and that the National Research Council[4] had confirmed its reliability. He testified that the Mobile lab ran quality control tests simultaneously with its analysis of the DNA sample; that the quality control tests supported the reliability of the sample taken in this case; that he was present when his supervisor performed the first part of the sampling procedure; that he performed the remainder of the sampling procedure; and that the sample's condition had not affected the analysis. We agree with the Court of Criminal Appeals' conclusion that the record fully supports the State's argument that it had satisfied the third prong of the Frye
test.
We have considered each of the issues raised in the defendant's brief, and, we have searched the record for plain error, whether or not it was brought to our attention or to the attention of the trial court. Rule 39(k) and Rule 45A, Ala.R.App.P. We have found no error that adversely affected Brooks's rights. Additionally, we conclude that the opinion of the Court of Criminal Appeals properly addressed the requirements of § 13A-5-53(a) and (b), Ala. Code 1975.
For the reasons stated, the judgment of the Court of Criminal Appeals is due to be affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, BUTTS, and SEE, JJ., concur.
[1] See Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 827,17 L.Ed.2d 705 (1967); Lakeside v. Oregon, 435 U.S. 333,98 S.Ct. 1091, 55 L.Ed.2d 319 (1978) (holding that trial court's curative instruction that jury should draw no adverse inferences from defendant's failure to testify does not violate privilege against self-incrimination); United States v.Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (applying the harmless-beyond-a-reasonable-doubt standard);Duncan v. Stynchcombe, 704 F.2d 1213, 1215-16 (11th Cir. 1983) (holding that a prosecutor's comments on the failure of the defense, as opposed to that of the defendant, to counter or explain the testimony presented or evidence introduced is not an infringement of the defendant's Fifth Amendment privilege);Marsden v. Moore, supra; United States v. Norton,867 F.2d 1354, 1364 (11th Cir.), cert. denied, 493 U.S. 871,110 S.Ct. 200, 107 L.Ed.2d 154 (1989) (holding that an indirect reference, directed toward defense counsel's failure to rebut the Government's evidence, is not reversible error per se);United States v. LeQuire, 943 F.2d 1554 (11th Cir. 1991) (holding that no "manifest intent" exists where another, equally plausible explanation for the remark is present, and that even if a comment is a direct comment, which would satisfy the element of "naturally and necessarily," it may, nevertheless, constitute error harmless beyond a reasonable doubt, where the overwhelming evidence of guilt and the trial court's curative instruction would have negated any influence on the jury in reaching its verdict); United States v. Delgado,56 F.3d 1357, 1369 (11th Cir. 1995), cert. denied, ___ U.S. ___,116 S.Ct. 713, 133 L.Ed.2d 667 (1996) (stating that "[e]ven if the prosecutor's remarks were prejudicial, the district judge gave a curative instruction which, under settled Eleventh Circuit law, would render any error harmless where the evidence of guilt was overwhelming").
[2] See Street v. State, 266 Ala. 289, 96 So.2d 686 (1957); Exparte Williams, supra; Padgett v. State, 45 Ala. App. 56,223 So.2d 597, 602, cert. denied, 284 Ala. 732, 223 So.2d 603
(1969) (stating that where only the defendant and his co-defendant could deny the inculpatory testimony, the prosecutor's remark that certain testimony was uncontradicted raised a danger that the jury would draw an improper inference from the defendant's failure to take the stand); Pittman v.State, 462 So.2d 791, 793 (Ala.Crim.App. 1984); Windsor v.State, 593 So.2d 87 (Ala.Crim.App. 1991).
[3] TWGDAM is a voluntary quality assurance group coordinated through the FBI and composed of 35 forensic scientists representing 22 state and local agencies around the country.
[4] The National Research Council is a group of scientists outside the forensic community that has issued a report attesting to the reliability of the RFLP method.