PER CURIAM.
A jury convicted Hoa Thanh Nguyen on four counts of second-degree assault, in violation of § 13A-6-21, Ala.Code 1975. The trial judge sentenced Nguyen to 10 years’ imprisonment for each conviction, with the sentences to run concurrently. The Court of Criminal Appeals, on August 14, 1998, affirmed his conviction by an unpublished memorandum, stating the facts as follows:
“The state’s evidence tended to establish the following. In the late afternoon of December 25, 1996, the appellant and approximately 15 other people congregated in the parking lot outside a neighborhood video/karaoke business in Mobile. Vu Le, one of the people in the group, testified that the appellant and an individual named Hiep began to argue. Vu Le testified that he saw Hiep hit the appellant with a beer bottle. The appellant then got into a car and left.
“Several witnesses testified that approximately ten minutes later, the appellant returned with three other people. The appellant got out of the car and began shooting at the group of people in the parking lot. Tuan Tranh Nguyen, one of the people in the group, testified that no one approached the car or provoked the appellant. Tuan Tranh Nguyen, Vu Le, Tan Pham, and Hai Nguyen were shot by the appellant. Vu Le, Tan Pham, and Hai Nguyen identified the appellant in court as the person who shot them. Thang Phi Nguyen also witnessed the shooting and identified the appellant as the shooter. ...
“ JThere are several witnesses with the last name ‘Nguyen.’ Hai Nguyen, Tuan Tranh Nguyen, Thang Phi Nguyen, and Tue Tri Nguyen are not related to the appellant.”
Nguyen v. State, 741 So.2d 481 (Ala.Crim. App.1998) (table). This Court granted certiorari review to determine whether the Court of Criminal Appeals erred in holding that Nguyen did not properly preserve for appellate review the ruling on his motion made pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court had denied Nguyen’s Batson motion, on the merits and without considering any question of timeliness.
The Court of Criminal Appeals held that because Nguyen made his Batson motion after the jury was sworn and after opening statements had been made, his motion was untimely and the trial court should not have entertained it. However, as Nguyen points out, the State did not object to his motion as untimely, nor did the State argue in the Court of Criminal Appeals that the motion was untimely. This Court held *1226 in Ex parte Williams, 571 So.2d 987 (Ala.1990), that the State’s failure to object to a Batson motion as untimely waives that objection. Thus, the Court of Criminal Appeals’ holding conflicts with Ex parte Williams, and the Batson issue' is clearly before us.
The record reflects that Nguyen’s defense counsel moved to quash the jury panel on the ground that the State’s use of its peremptory strikes violated the principles expressed in Batson:
“MR. BOLLER: [There are] six Afro-Americans on the panel. The State struck four of them. I think that’s unreasonable and that this is not a fair jury, and I’d ask the State to explain its reasons.”
We need not determine whether Nguyen presented a prima facie case of discrimination by showing that the State struck % of the African-American members of the ve-nire. Although the trial court never ruled on the question whether Nguyen had presented a prima facie case of discrimination, the court had the State present its reasons for the strikes. Because the trial court had the State present its reasons for its strikes without first requiring Nguyen to show a prima facie case of discrimination, “this Court will review the reasons given and the trial court’s ultimate decision on the Batson motion without any determination of whether the moving party met its burden of proving a prima facie case of discrimination.” Ex parte Brooks, 695 So.2d 184, 190 (Ala.), cert. denied, 522 U.S. 893, 118 S.Ct. 233, 139 L.Ed.2d 164 (1997). The State gave the following reasons:
“MR. FURMAN: Judge, number 62, this is a young black female. I noted that she is a day-care worker at Rock of Faith Church. It has been my experience, despite Your Honor’s question to them, that members of this particular protestant religion often do find it very hard or are unwilling to sit in judgment of their fellowman. I struck her for that reason and that reason alone. It had nothing to do with her race. Do you want me to proceed or we can argue each one?
“THE COURT: Go ahead.
“MR. FURMAN: Number 71, [Y.P.], a young female. She works for — my notes here — Mobile Community Action Center. If I’m not mistaken, that is the community organization that was recently the subject of a number of indictments, an investigation by this particular office. That is my impression of this group, and I believe for that reason that I would prefer to strike them. I’m not certain that the State can get a fair trial from somebody that we have previously targeted for prosecution.
“Number 79, [K.H.], a Circle K sales clerk, she was laughing and cutting up with other jurors during the voir dire by my observation. She did not appear to be taking the proceedings seriously. I struck her for that reason.
[[Image here]]
“MR. FURMAN: Number 63, I notice he was a maintenance worker at Hol-nam. That’s the company that burns toxic wastes, I believe, out in the, I believe, Chickasaw area. I’m not certain of the involvement of the D.A.’s office with that particular case, but I know that they have been asked to investigate further.
“Prior to going to work for the district attorney’s office, I was the staff attorney for a local newspaper that had written a series of articles extremely critical of Holnam and their plan to burn toxic wastes and actually supported the community action group that attempted to prevent Holnam from moving there, but also has tried to shut them down. I did not feel particularly comfortable with that particular juror.”
Nguyen’s defense counsel then stated, in rebuttal:
“MR. BOLLER: Yes, I make a motion for a new trial. I mean, he said three [sic] of the four he struck were supposedly connected with employment organi *1227 zations that were under investigation. These jurors were qualified on that. Nobody responded to that. That’s not relevant. The only other reason he gives is that [the] other juror was cutting up, and I was watching the voir dire and I didn’t see her cutting up.”
The trial court then denied the Batson motion, on its merits.
In Ex parte Branch, 526 So.2d 609 (Ala.1987), this Court held that once a prosecutor has articulated race-neutral reasons for challenging a particular juror, the defendant can offer evidence showing that the reasons or explanations stated are merely a sham or pretext. Id. at 624. Nguyen argues that no voir dire examination was conducted about the employers that the prosecutor referred to as being under investigation. He argues that, in fact, there was only desultory voir dire, that no meaningful questions were posed to the challenged jurors. This Court has held that the State’s failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination. Ex parte Bird, 594 So.2d 676, 683 (Ala.1991). In the absence of any examination, the trial court had nothing on which to make the required “sincere and reasonable effort to evaluate the evidence and explanations.” Ex parte Branch, 526 So.2d at 624. Furthermore, this Court has said that “unarticulated ‘gut feelings’ about a veniremember” cannot rebut a properly supported Batson challenge. Ex parte Bird, 594 So.2d at 684. “No merely whimsical or fanciful reason will suffice as an adequate explanation” for striking a veniremember. Ex parte Jackson, 516 So.2d 768, 772 (Ala.1986).
The State cites Ex parte Lynn, 543 So.2d 709, 712 (Ala.1988), cert. denied, 493 U.S. 945, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989); Taylor v. State, 666 So.2d 36, 42 (Ala.Crim.App.1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996); and Stephens v. State, 580 So.2d 11, 20 (Ala. Crim.App.1990), aff'd, 580 So.2d 26 (Ala.), cert. denied, 502 U.S. 859, 112 S.Ct. 176, 116 L.Ed.2d 138 (1991), in support of the prosecutor’s striking veniremembers 71, 79, and 63 on the basis that he was “not comfortable” with them. Those cases are distinguishable, however, because in each of them the prosecution had conducted specific voir dire examination of the individual members who were struck. Here, the State had conducted no specific voir dire of the African-American jurors it struck.
This Court said in Ex parte Bird, “[E]ven explanations that would ordinarily pass muster become suspect where one or more of the explanations are particularly fanciful or whimsical.” 594 So.2d at 683.
“ ‘The explanation offered for striking each black juror must be evaluated in light of the explanations offered for the prosecutor’s other peremptory strikes, and as well, in light of the strength of the prima facie case. The persuasiveness of a proffered explanation may be magnified or diminished by the persuasiveness of companion explanations, and by the strength of the prima facie case.’ ”
Bird, 594 So.2d at 683 (quoting Gamble v. State, 257 Ga. 325, 327, 357 S.E.2d 792, 795 (1987)). Here, the prosecutor stated as one of his reasons for striking an African-American veniremember that she was “laughing and cutting up with other jurors during the voir dire” and did not appear to be taking the proceedings seriously. Counsel for Nguyen responded by stating that he “was watching the voir dire” and did not see the juror “cutting up.”
We conclude that, as to each of these African-American veniremembers, the explanations proffered by the State are insufficient to support the strike. The record reflects a lack of meaningful questions to any of these prospective jurors, yet the prosecutor struck all of them. As to each of these prospective jurors, the reasons *1228 stated by the prosecutor were not the “clear, specific, and legitimate reason[s]” required by Ex parte Branch, 526 So.2d at 623.
The “constitutional deficiency of an explanation” is not remedied “simply by augmenting it with similar excuses none of which, standing alone, would be sufficient” to rebut a prima facie case of discrimination. Ex parte Bird, 594 So.2d at 683. Following United States Supreme Court precedent, we apply the rule that “one unconstitutional peremptory strike requires reversal and a new trial.” Id.
The judgment of the Court of Criminal Appeals is reversed, and the cause is remanded for that court to order further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and COOK, SEE, LYONS, and JOHNSTONE, JJ„ concur.
HOUSTON, J., concurs in the result.
MADDOX, J., dissents.
BROWN, J., recuses herself.*